[Crim. No. 30239. Second Dist., Div. One. Aug. 3, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD FLORES GUTIERREZ, Defendant and Appellant.

**COUNSEL**

Lee P. Crystal, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—Defendant appealed from a municipal court judgment entered on a jury verdict finding him guilty of using an opiate, a misdemeanor (§ 11550, Health & Saf. Code). The appellate department of the superior court reversed the judgment and ordered publication of its opinion. Subsequently, on this court's own motion, the cause was ordered transferred hereto for hearing and decision pursuant to rule 62(a), California Rules of Court.

---

\*Before Lillie, Acting P. J., Thompson, J., and Hanson, J.

We have examined the original file of the appellate department of the superior court including the reporter's transcripts of all oral proceedings had in the municipal court and conclude that the opinion and judgment of the appellate department of the superior court correctly determine the legal issues involved, thus, we adopt the entirety of the opinion prepared by Judge Arthur L. Alarcon, and the judgment based thereon.

"The defendant has appealed from his conviction for using an opiate in violation of Health and Safety Code Section 11550. His pretrial motion to suppress the observations of the arresting officer was denied.

"He contends that he was the victim of an unreasonable search which renders his prosecution constitutionally impermissible. We agree.

"Factual Background

"Officer Charles Heilman testified he was present at the El Patio Bar on October 29, 1975. At 11:40 p.m. he saw the defendant leave the restroom and pass him on the way to the bar. The defendant was holding a bottle of beer. Despite the poor lighting, he observed two small brown scab marks over a vein on the defendant's right hand. One scab was an inch long. He had seen such scabs many times before in connection with the illegal injection of heroin. Officer Heilman also noticed that the defendant's eyes were watery, his pupils were pinpointed and appeared dilated and he was sniffling and yawning. These symptoms indicated to Officer Heilman that the defendant was experiencing withdrawal symptoms from the illegal use of an opiate.

"Officer Heilman told the defendant he was going to examine him for a narcotics violation and asked him to step outside. In the patio outside the bar, the defendant was requested to remove his coat. Officer Heilman observed nine puncture wounds on the defendant's left arm and eight or nine on his right arm. The freshest puncture wound was two days old. Officer Heilman used a magnifying glass to examine the puncture marks. The defendant was arrested after Officer Heilman examined the defendant's arms.

"At the hearing on the motion to suppress, defense counsel argued that the detention was unlawful and that therefore the observations of the defendant's arms were the product of an unreasonable search.

"The People argued successfully that the presence of tracks and marks on the defendant's hand gave the officer 'reasonable cause to believe that a misdemeanor is being committed, namely a 11550', in that 'the defendant was going through withdrawals.'

"Discussion

■  "The observations made by Officer Heilman of the defendant's arm were made as the result of the request by the officer that the defendant remove his coat. These observations constituted a search. Since no emergency has been shown by the facts, in the absence of consent or a warrant, the only justification for this search would be on the basis that it was incident to a lawful arrest.

"Penal Code section 836 provides in pertinent part: 'A peace officer may make an arrest . . . without a warrant . . .: 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence.'

"The prosecution proceeded on the theory that the arrest was lawful because the officer had reasonable cause to believe that a violation of section 11550 of the Health and Safety Code was being committed in his presence. Section 11550 provides in pertinent part as follows: 'No person shall use, or be under the influence of any controlled substance . . . which is a narcotic drug . . . .'

"The arresting officer testified that he believed that the defendant was exhibiting withdrawal symptoms caused by the illegal use of an opiate.

■  "We must decide the novel question as to whether the fact that a person is observed to be experiencing withdrawal symptoms establishes reasonable cause to believe a violation of Section 11550 is being committed in the presence of the observer. To answer this query we must analyze the nature of the separate crimes of 'use' and of being 'under the influence of' a controlled substance or a narcotic.

■  "The term 'use' of narcotics refers to the act of injecting or ingesting a controlled substance or narcotic (see *People* v. *Thompson* (1956) 144 Cal.App.2d Supp. 854, 856 [301 P.2d 313]). ■ 'The object of the statute is to proscribe a *use* of narcotics that is an activating part of the process of addiction whatever may be the stage of that process at the

time of their use.' (Emphasis added.) (*People* v. *Davis* (1966) 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663].)

■ "An officer may arrest for use under section 11550 of the Health and Safety Code when he has reasonable cause to believe that the person to be arrested has injected or ingested a controlled substance in the officer's presence. ■ Nothing in the facts presented to the trial court would support a finding that the search of the defendant was based on a reasonable belief that the defendant had used narcotics or a controlled substance in the officer's presence.

■ "The term 'under the influence' as used in section 11550 of the Health and Safety Code refers to the presence of physical symptoms of the unlawful use of narcotics or a controlled substance 'in any detectable manner.' (*People* v. *Davis* [1966] 240 Cal.App.2d 496, 501). ■ In the instant matter there was no evidence that the defendant was under the influence of a narcotic or a controlled substance at the time of the search.

"The basis for the search was the opinion of the officer that the defendant was experiencing withdrawal symptoms. ■ Withdrawal from the use of narcotics is not a crime. It is in fact the direct result of discontinuing the crime of use. In *People* v. *Victor* (1965) 62 Cal.2d 280 [42 Cal.Rptr. 199, 398 P.2d 391], the Supreme Court discusses the various stages of the addiction process. In its discussion of withdrawal symptoms the Supreme Court stated: '(5) temporary cessation (whether voluntary or not) of use of the drug, resulting in manifestation of *physical dependence* in the form of withdrawal symptoms' (at p. 302).

"It is our view that persons who have ceased the use of narcotics and controlled substances, for whatever reason, should be encouraged and supported rather than subjected to unwarranted searches. ■ The search of the defendant cannot be justified as incident to a lawful arrest. Accordingly, the trial court erred in denying the motion to suppress the observations of the officer which resulted from the direction to the defendant to take off his coat. The evidence obtained following these observations, including the defendant's statement, was tainted and should have been suppressed (see *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *Brown* v. *Illinois* (1975) 422 U.S. 590, 598-599 [45 L.Ed.2d 416, 423-425, 95 S.Ct. 2254]).

"The judgment is reversed. The trial court is directed to vacate its order denying the motion to suppress and to enter an order granting such motion consistent with this opinion."

**HANSON, J.**—I respectfully dissent.

I am compelled to register a dissent on the grounds that in my view the majority opinion "run[s] counter to *both* the 'legalities' of the case and the 'realities' of the disastrously mushrooming drug scene which California citizens increasingly demand that its public servants, in all branches of government, including the judiciary, bring under control." (*People* v. *Holly* (1976) 62 Cal.App.3d 797 [133 Cal.Rptr. 331], dis. opn. of Hanson, J. at p. 807, original italics.)

My reasoning follows:

## THE CASE

On October 30, 1975, defendant was charged with the unlawful use and being under the influence of a controlled substance on October 29, 1975, in violation of Health and Safety Code section 11550 (hereinafter section 11550), a misdemeanor.

On November 21, 1975, defendant's motion in the municipal court to withdraw his previous plea of guilty was granted and a public defender was appointed to represent him.

On December 30, 1975, defendant's motion pursuant to Penal Code section 1538.5 was denied and the matter proceeded to jury trial.

On January 7, 1976, the jury returned a verdict of guilty as charged.

On February 23, 1976, defendant's motion for new trial was denied and he was sentenced to nine months in the county jail with credit for time served.

Although a minute order in the municipal court file on the date of sentencing indicates defendant was sentenced for the offense of being "under the influence of narcotics," the entire file clearly shows defendant was tried and convicted under the "use" provision of section 11550.[1]

---

[1]The reporter's transcript of the trial contains the following statements to the jury by the prosecuting attorney (following his opening statement) and the court:

On March 19, 1976, defendant filed his notice of appeal to the appellate department of the superior court on the grounds, as contained in the "Settled Statement by Court", that "(1) Officer Heilman lacked probable cause to detain the defendant for investigation at the time he made the initial contact; (2) Officer Heilman did not have probable cause to arrest the defendant after completing his examination; (3) The court errored [*sic*] in a matter of law in permitting Officer Heilman to testify as a narcotics expert; [and] (4) The evidence was insufficient to support the verdict of the jury."

On March 2, 1977, the appellate department of the superior court filed its opinion reversing the judgment and directed the trial court to vacate its order denying defendant's motion to suppress and to enter an order granting that motion.

On March 17, 1977, we ordered the cause transferred to this court for hearing and decision pursuant to rule 62(a), California Rules of Court.

## THE FACTS

Police Officer Charles Heilman testified at both the hearing on defendant's motion pursuant to Penal Code section 1538.5 and the trial substantially as follows: that he was in uniform and making a routine check of the El Patio Bar in Pomona at approximately 11:40 p.m. on

---

"[Mr. Howell, prosecuting attorney]: . . . .

"So, based upon that, the People's [*sic*] feel that they will clearly establish that he *used* heroin, not was under the influence of heroin, within the Pomona Judicial District.

"Thank you.

". . . . . . . . . . . . . . . . . .

"THE COURT: All right. It's clearly understood by the jury that this case has to do with the *use* of the controlled substance heroin.

"The People are not going to attempt to prove that the defendant was under the influence at the time he was arrested; is that right?

"MR. HOWELL: No.

"THE COURT: This is part of the events. Actually, there are two heads to it. Either one of them would be sufficient, but the prosecution is only going to attempt to prove *use* and that that use was within the Pomona Judicial District.

"Call your first witness." (Italics added.)

The court instructed the jury on CALJIC No. 16.060 modified to read as follows: "USE OF A CONTROLLED SUBSTANCE—DEFINED, Health and Safety Code, § 11550. [¶] Every person who [uses] a controlled substance, such as heroin, as charged in the complaint, is guilty of a misdemeanor. [¶] In order to find the defendant guilty of this offense, you must find that he unlawfully used a narcotic on or about October 29, 1975."

In addition, the jury verdict form signed by the foreman and dated January 7, 1976, contains the following language: "We, the jury in the above-entitled cause, find the defendant Richard Flores Gutierrez Guilty of the offense charged, to wit: 11550 Health & Safety Code (illegal use of narcotics)."

October 29, 1975, when he observed defendant leave the restroom and pass within one foot of him, carrying a beer bottle in his right hand; that he (Officer Heilman) observed "some injection sites on the backside of his right hand" consisting of "two small puncture wounds with brown scabs" over the veins on the defendant's right hand, one of which was over an inch in length; that the scabs were the type which he (Officer Heilman) recognized as resulting from the injection of heroin; that defendant's pupils were dilated, he was sniffling and yawning, and his eyes were watery; that based upon his previous experience, he (Officer Heilman) formed the opinion that the defendant was exhibiting the symptoms of withdrawal from the use of an opiate; that he approached defendant who was sitting at the bar and requested that defendant accompany him to a patio area outside the bar; that when they arrived on the patio he requested defendant to remove his coat and observed, with the aid of a magnifying glass, numerous puncture wounds on defendant's arms and hands, all of which were over veins; that there were nine marks on the left hand and arm and eight or nine on the right hand and arm; that the color of the wounds varied from red to dark brown with the oldest wound appearing to be about two days old; that after defendant waived his rights, he (defendant) stated that he last used heroin a week ago; that defendant was placed under arrest and a urine test made at the police station did not indicate the presence of heroin.

During the trial, Police Officer Dale Gerald La Fleur, whose expertise in the field of narcotics is undisputed, in response to a hypothetical question posed by the prosecuting attorney containing Officer Heilman's observations of defendant testified as an expert that the person described (defendant) "was going through early withdrawls [sic]."[2]

Defendant Gutierrez' testimony at the motion to suppress pursuant to section 1538.5 substantially was: that he was in the El Patio Bar the night testified to by Officer Heilman; that he had arrived at the bar about four hours prior to his arrest and during that time he had seven or eight beers and was feeling kind of high; that he went to the restroom and returned to the bar and about a half hour later the police entered the bar and as

---

[2]The reporter's transcript contains the following colloquy:

"Q. So, you would state that this person was going through early withdrawls [sic], is that what you would state?

"A. Yes.

"Q. When does that occur in relation to the time of injection?

"A. It's hard to say. It depends on the individual, how long he's been using, how strong the heroin that he used and has been using. His physical condition——.

"Q. Give us a minimum and maximum range.

"A. I would say within 12 to 24 hours."

soon as they entered Officer Heilman motioned with his finger for him to come outside; that he did not have a coat on but the police told him to roll up his shirt sleeves; that he did have track needle marks on his left hand but none on his right hand.

Defendant did not testify at the jury trial.

## ISSUES

Defendant contends (1) that Officer Heilman lacked probable cause to temporarily detain the defendant for investigation; (2) that there was no probable cause for Officer Heilman to arrest defendant after completing his examination; (3) that the court erred as a matter of law in permitting arresting Officer Heilman to testify as an expert in the field of narcotics; and (4) that the evidence is insufficient to support the (jury verdict) judgment of conviction.

## DISCUSSION

## I

The resolution of the first two contentions listed above turns on the answer to a more basic question, namely: whether or not the exhibition of "withdrawal symptoms" resulting from the "use" of an illegal opiate (heroin) constitutes "probable cause" for an officer to believe that a violation of section 11550 (a misdemeanor) is being committed "in his presence" as required by Penal Code section 836 (hereinafter section 836).

### Section 11550

Section 11550, in pertinent part, provides: "No person shall *use, or be under the influence* of any controlled substance . . . which is a narcotic drug . . . ." (Italics added.)

The case law and rules of statutory construction in conjunction with the clear and unambiguous language of section 11550 compels me to conclude that it was the legislative purpose to make it a misdemeanor for any person to either (a) make unlawful "use" of a narcotic drug or (b) "to be under the influence" of such a drug. The object of section 11550 was to attack the entire addiction process. To accomplish that purpose it condemns, forbids, prohibits and outlaws the "use" of narcotics that is an

activating part of the process of addiction and makes it illegal to be "under the influence" of a narcotic drug during that process.[3]

In the case of *People* v. *Thompson* (1956) 144 Cal.App.2d Supp. 854 [301 P.2d 313], defendant was charged with and convicted of violation of Health and Safety Code section 11721 which provided that "No person shall unlawfully *use* or *be addicted* to the unlawful use of narcotics . . . ." (Now section 11550, which does not make it illegal to be an addict but in lieu thereof makes it unlawful to be under the influence of a narcotic drug.) Paraphrasing *Thompson* at page 856: "Certain conclusions appear to us to be inescapable. The Legislature [in section 11550] has effectively made it a misdemeanor for a person either (a) to make unlawful use of narcotics or (b) to be [under the influence of such a narcotic]. One is an act, the other is a [temporary] condition . . . . They are not identical. It is as though a statute made it a public offense either to take a drink or be drunk in a public place. . . ."[4]

Moreover, it is a cardinal rule of statutory construction that "[i]f possible, *significance should be given to every word* . . . in pursuance of the legislative purpose. [Citation.] . . ." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672], italics added; see also, *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260]; *Eckl* v. *Davis*

---

[3]The significance which the Legislature attached to the word "use" in section 11550 becomes apparent when it is noted that the word "use" or its synonym is conspicuously absent in legislation directed at the control of alcoholic beverages. The reason for the difference in the language of legislation controlling alcoholic beverages from that controlling narcotic drugs is that in the former it is not unlawful to "use" or "consume" alcoholic beverages, except for minors under certain circumstances.

It is only unlawful to be "under the influence of intoxicating liquor" in certain circumstances. (See, e.g., Pen. Code, § 647 [drunk in a public place constitutes disorderly conduct, a misdemeanor]; Veh. Code, § 23102 [misdemeanor drunk driving]; Veh. Code, § 23101 [felony drunk driving].)

In the case of minors Business and Professions Code section 25658, subdivision (a), makes it a misdemeanor for any person to sell, furnish or give any alcoholic beverage to any minor and a misdemeanor for any minor under section 25658, subdivision (b), to purchase or *consume* any alcoholic beverage in any on-sale premises.

[4]The court in *People* v. *Thompson, supra,* 144 Cal.App.2d Supp. 854, reversed the conviction primarily on the ground that the trial court improperly instructed the jury in respect to venue.

In the case at bench the trial court properly instructed the jury in respect to the venue issue as follows: "The People must prove by a preponderance of the evidence that the illegal use of narcotics occurred within the Pomona Judicial District. Mere arrest alone in the Pomona Judicial District which include [*sic*] Pomona is not sufficient to establish venue."

(1975) 51 Cal.App.3d 831, 848-849 [124 Cal.Rptr. 685]; *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 531 [120 Cal.Rptr. 762]; *Anaheim Union Water Co.* v. *Franchise Tax Bd.* (1972) 26 Cal.App.3d 95, 105-106 [102 Cal.Rptr. 692]; *Beirut Universal Bank* v. *Superior Court* (1969) 268 Cal.App.2d 832, 841-842 [74 Cal.Rptr. 333].)

Here, applying the above rule of statutory construction, the significance of the word "use" followed by the disjunctive "or" is that the Legislature intended what it said—two distinct prohibitions—"use" or being "under the influence" of a narcotic drug.

*It is important to note that in the instant case, defendant was not arrested for being a narcotic addict or exhibiting "withdrawal symptoms." It is not unlawful to be a narcotic addict as it is not unlawful to be an alcoholic. It is not unlawful to have "withdrawal symptoms" as it is not unlawful to have a hangover following an alcoholic binge.*

*However,* "withdrawal symptoms" may constitute circumstantial evidence of recent "use" of a narcotic drug or of being under the influence of such a drug. Here defendant was arrested for a violation of section 11550 and was prosecuted, convicted and sentenced for "use" of a narcotic drug (heroin) in violation of that section and *not* for being "under the influence" also prohibited by that section. As previously noted, the "use" of a narcotic drug entails an act of availing oneself of, employing, and injecting such a drug.

*Section 836*

Section 836, in pertinent part, provides: "A peace officer may . . . , without a warrant, arrest a person: [¶] 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense *in his presence*. . . ." (Italics added.)

A literal construction of the "in his presence" clause of section 836 would, as a practical matter, render the "use" prohibition of section 11550 meaningless since users of narcotics obviously inject in private places and do not normally inject "in the presence" of police officers.

In an effort to effectuate the legislative purpose in section 11550 prohibiting the "use" of a narcotic drug and the "in the presence" clause of section 836, case law, pertinent rules of statutory construction, the nature of the addiction process and the law of circumstantial evidence must be considered.

## Case Law

Case law has liberally construed the term "in his presence." "Presence" has been construed as not requiring mere physical proximity. It is determined by whether the offense is apparent to the officer's senses. (See *People* v. *Burgess* (1959) 170 Cal.App.2d 36, 41 [338 P.2d 524]; *McDonald* v. *Justice Court* (1967) 249 Cal.App.2d 960, 962-963 [58 Cal.Rptr. 29]; *People* v. *Sjosten* (1968) 262 Cal.App.2d 539, 544-545 [68 Cal.Rptr. 832], disapproved on other grounds in *People* v. *Superior Court* [*Hawkins*] (1972) 6 Cal.3d 757, 765-766, fn. 7 [100 Cal.Rptr. 281, 493 P.2d 1145].)

Here, Officer Heilman through his sense of sight observed the objective signs of "withdrawal symptoms" and the scabs on defendant's hands and arms. The officer's testimony and experience in this field reasonably caused him to believe that defendant had committed the offenses prohibited by section 11550.

## Statutory Construction

In construing section 11550 and section 836, rules of statutory construction require that both sections "[s]hould be interpreted so as to produce a result that is reasonable. (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801].) If two constructions are possible, that which leads to the more reasonable result should be adopted. (*In re Kernan* (1966) 242 Cal.App.2d 488, 491 [51 Cal.Rptr. 515].)" (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)

One "[m]ust look to the context of the law, and where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation, (*Ivens* v. *Simon, supra*, 212 Cal.App.2d 177, 181) . . . [and] take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. (*Estate of Jacobs* (1943) 61 Cal.App.2d 152, 155 [142 P.2d 454].)" (*Alford* v. *Pierno, supra*, 27 Cal.App.3d at p. 688; see also *People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].)

Moreover, such "purpose" will not be sacrificed to a literal construction of any part of the act and consideration must be given " '. . . to the whole system of law of which [they are] a part so that all may be *harmonized* and have effect.' . . ." (*Select Base Materials* v. *Board of*

*Equal., supra,* 51 Cal.2d 640, 645, italics added; *People* v. *Taylor, supra,* 46 Cal.App.3d 513, 531.)

### Nature of the Addiction Process

The Supreme Court in *People* v. *Victor* (1965) 62 Cal.2d 280 [42 Cal.Rptr. 199, 398 P.2d 391], in a unanimous opinion addressed the propriety of committing the defendant to a narcotics treatment facility. The court discussed in depth narcotic addiction and stated at page 301: "[T]he Legislature has in effect recognized the fundamental medical fact that narcotics addiction is not so much an event as a process." The court went on to list "[a]mong the identifiable stages in this process . . . (5) temporary cessation (whether voluntary or not) of use of the drug, resulting in manifestation of *physical dependence* in the form of withdrawal symptoms; . . ." (*Id.,* at pp. 301-302, original italics.)

The case of *People* v. *Davis* (1966) 240 Cal.App.2d 496 [49 Cal.Rptr. 663], hearing denied April 17, 1966, involved a defendant who was arrested and convicted of "being under the influence" of a narcotic in violation of Health and Safety Code section 11721 (now § 11550). Although the *Davis* case did not involve a violation of the "use" prohibition, it discussed the nature of the *addiction process,* held prohibition against one "under the influence" applied to any person displaying that condition in *any detectable manner* and tangentially refers to "the unlawful use" of narcotics.

In the *Davis* case, the arresting officer testified that defendant's pupils " 'were constricted, that he appeared to have a feeling or a being of indifference, of well-being, perhaps.' " (240 Cal.App.2d at p. 498.) Needle marks were also observed on defendant's arms. The appellate court affirmed the conviction.

In answering defendant's contention that the evidence was not sufficient to establish probable cause to arrest him for being "under the influence" of a narcotic because there was no showing his behavior was irregular, the *Davis* court said at pages 500 and 501:

"[T]his contention is predicated upon the legal premise that to be under the influence of narcotics within the proscription of the statute the person so affected must be guilty of some irregular behavior, and upon the factual premise that at the time of his arrest defendant's capabilities appeared to be normal, his judgment was not clouded, he was

perceptive, and was not sleepy. Arguments in support of the legal premise are that the statute should be construed consistently with the statute which proscribes driving an automobile while under the influence of intoxicating liquor, and that to construe it otherwise would prohibit a narcotics addict from maintaining his 'normal state', which would constitute punishment for addiction contrary to the holding in *Robinson* v. *California,* 370 U.S. 660 [82 S.Ct. 1417; 8 L.Ed.2d 758].

"The statute, i.e., section 11721 of the Health and Safety Code, declares: 'No person shall use, or be under the influence of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics . . . .' Certain uses and resultant influence expressly are excepted from the proscription imposed. The fact that an addict, as well as other persons, is penalized for using narcotics other than as approved, does not constitute punishment for addiction. The statute is regulatory in nature; constitutes a valid exercise of the police power (*Minnesota* ex rel. *Whipple* v. *Martinson,* 256 U.S. 41, 45 [41 S.Ct. 425, 426, 65 L.Ed. 819]); and has been upheld as constitutional. (*In re Becerra,* 218 Cal.App.2d 746, 747 [32 Cal.Rptr. 910].)

"Narcotics addiction is a process. (*People* v. *Victor,* 62 Cal.2d 280, 301 [42 Cal.Rptr. 199, 398 P.2d 391].) At different stages the symptomatic effects of the process are different. (See *Ibid.* pp. 301-304.) The object of the statute is to proscribe a use of narcotics that is an activating part of the process of addiction whatever may be the stage of that process at the time of their use. The provision making it an offense to be under the influence of narcotics must be construed in light of this object. So construed, the statute applies to every person who, following the unlawful use of narcotics, is under the influence thereof in any detectable manner. The symptoms of influence are not confined to those commensurate with misbehavior, nor to demonstrable impairment of physical or mental ability. (*Morales* v. *United States,* 344 F.2d 846, 850.) By making it an offense to be under the influence of narcotics the statute facilitates enforcement of the proscription against use."

### The Law of Circumstantial Evidence

In the instant case the trial court properly instructed the jury fully on the law as to both direct and *circumstantial evidence.*[5]

---

[5]In the instant case the trial court instructed the jury in respect to circumstantial evidence as follows:

Here, although Officer Heilman did not see defendant inject (use) heroin into his veins, the "withdrawal symptoms" and tracks on defendant's hands and arms which the officer observed constituted reasonable cause for him to believe and for the jury to logically and reasonably infer that defendant had recently injected (used) heroin in violation of section 11550.

Finally, as I construe the majority opinion it has the *net effect* of rewriting section 11550 to make it *only* unlawful to "use" (inject into one's veins) heroin in the physical presence of police officers. A fortiori, there is no legal prohibition on the "use" of heroin so long as one is careful not to inject it with a police officer watching. It is not reasonable to believe the Legislature intended such a restrictive construction.

Moreover, I am constrained to comment on the statement in the majority opinion that " 'It is our view that persons who have ceased the use of narcotics and controlled substances, for whatever reason, should be encouraged and supported rather than subjected to unwarranted searches.' " The foregoing statement appears to be a declaration of public policy intended to buttress the decision which restricts the "use" prohibition of section 11550.[6]

---

"The word 'evidence', as used in these instructions, means the testimony of witnesses, a writing, a material object, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.

"Evidence is either direct or circumstantial.

"Direct evidence means exactly what the term says—that is, it is evidence that directly proves a fact, without having to infer that fact from some other fact, and is evidence which in itself, if true, conclusively establishes that fact.

"Circumstantial evidence, on the other hand, means evidence that proves a fact from which you may logically and reasonably infer the existence of another fact.

"Both direct and circumstantial evidence are acceptable means of proof. Neither is entitled to any greater weight than the other.

"(You may not find the defendant guilty based on circumstantial evidence unless the proved circumstances are not only consistent with the assumption that defendant is guilty, but cannot be reconciled with any other rational conclusion and each fact of the circumstantial evidence necessary to establish defendant's guilty [*sic*] has been proved beyond a reasonable doubt.

"Also, if the evidence is susceptible of two reasonable interpretations, one of which points to defendant's guilt and the other to his innocence, you must adopt that interpretation which points to his innocence and reject the other which points to his guilt.)"

[6]Paraphrasing the above, would a statement to the effect that "persons who have ceased beating their wives and children, for whatever reason, should be encouraged and supported rather than subjected to arrest and conviction for assault and battery" be considered an expression of sound public policy? I think not. The acts of "use" (injecting) of narcotics and the "beating" of a person's wife or children are against the announced public policy of the State of California as reflected in Penal Codes enacted by the Legislature which impose penalties, as a deterrent against and to prevent such actions occurring *in the first instance*.

Such a policy statement on the surface appears laudable. However, it is a piously shallow pronouncement in view of the nature of the addiction process with its disastrous effect on our society (see my dissent in *People* v. *Holly, supra,* 62 Cal.App.3d 797) and it conflicts with the clear legislative policy behind section 11550 which is directed at stamping out the "use" of controlled substances such as heroin.

Accordingly, by reason of the nature of the addiction process and to *harmonize* and effectuate in a reasonable manner the legislative purpose of both section 11550 and section 836 as hereinbefore discussed, I would hold as follows:

(1) That the "withdrawal symptoms" exhibited by defendant in the bar and observed by Officer Heilman constituted reasonable cause for Officer Heilman to temporarily detain defendant for further investigation and to ask him to step out into the patio and to inspect his arms and hands.

(2) That the observations of Officer Heilman of defendant's "withdrawal symptoms" coupled with the scabs on his arms and hands constituted circumstantial evidence of and reasonable cause for believing that defendant had violated section 11550.

(3) That defendant's exhibition of "withdrawal symptoms" which were observed by Officer Heilman satisfies the "in the presence" clause of section 836.

In *People* v. *Velasquez* (1976) 54 Cal.App.3d 695 [126 Cal.Rptr. 656], hearing denied March 18, 1976, defendant was convicted by a jury of offering to sell heroin (Health & Saf. Code, § 11352) and with using heroin (Health & Saf. Code, § 11550). The Court of Appeal affirmed the conviction for offering to sell heroin but reversed the conviction for using heroin, stating at pages 699 to 700:

"However, we agree that the record does not support the verdict on count III (the 'use' count). The evidence to support that count, as relied on here by the People, is as follows: (1) defendant admittedly had been a user of heroin in the past; (2) examination of his arms, on his arrest, disclosed some old marks, and several more recent; the more recent ones were, on the testimony of the People's expert, from five to seven days old; (3) defendant falsely claimed not to have used heroin for several months. Admittedly, defendant, although intoxicated from liquor, was not under the influence of narcotics at the time of arrest.

"The 'use' proscribed by section 11550 of the Health and Safety Code is a current use, not a use in the past. Even though defendant lied in claiming to have been free of narcotics for several months, the People's own testimony supports no usage closer than the five- to seven-day period testified to by their own expert. We conclude that, while usage no more distant than that might support a finding of danger to become (again) addicted, it does not support a finding of a current addiction and use."

The *Velasquez* case is clearly factually distinguishable from the case at bench. In *Velasquez* the only evidence to support the verdict was (1) that defendant had been a user of heroin in the past, (2) that the freshest marks on his arms were from five to seven days old, and (3) that the defendant claimed that he had not used heroin for several months.

Here, there was evidence of current, not past, use. Officer La Fleur testified as an expert that Officer Heilman's testimony as to the "withdrawal symptoms" exhibited by defendant were early withdrawals and defendant had used within 12 to 24 hours.[7] Defendant in *Velasquez* testified that he had not used heroin for several months while in the instant case defendant Gutierrez elected not to testify at the trial.

To the extent the *Velasquez* holding may be construed as in conflict with this opinion I disagree. An analysis of the legislative purpose of section 11550 in light of the nature of the addiction process, as discussed in *People* v. *Victor, supra,* 62 Cal.2d 280, compels this conclusion.

## II

I would further conclude that defendant's contention that the court erred in allowing Officer Heilman to testify as an expert witness is without merit.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) "The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be

---

[7]See footnote 2, *ante*, page 405.

disturbed on appeal unless a manifest abuse of discretion is shown. [Citations.]" (*People* v. *Kelly* (1976) 17 Cal.3d 24, 39 [130 Cal.Rptr. 144, 549 P.2d 1240].) " 'Expertness is relative to the subject, and any person who has special knowledge, skill or experience in any occupation, trade or craft may be qualified as an expert in his field. [Citations.]' " (*People* v. *King* (1968) 266 Cal.App.2d 437, 443 [72 Cal.Rptr. 478].)

Here Officer Heilman testified that he had been employed by the police department for three years, had attended three college classes on narcotics, had had discussions regarding narcotics violators with five physicians and three police narcotic experts, had read various publications on narcotics, had personally made other arrests of "sixty heroin addicts," and had talked to addicts regarding the use of heroin. Given the qualifications as stated by the officer, I cannot conclude any "manifest abuse of discretion" (*People* v. *Kelly, supra,* 17 Cal.3d 24, 39) has been shown by the trial court in permitting this officer to testify as an expert in the field of narcotics.

## III

I also conclude that defendant's contention that the evidence was insufficient to support the conviction for use of a narcotic in violation of section 11550 is also without merit.

"The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact." (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) In the case at bench the People expressly disclaimed any intention of proving that defendant was under the influence and instead proceeded as to "use" only. The record contains ample circumstantial and expert evidence from which the trier of fact could have concluded that there had been a recent use of heroin. The fact that the urine test was negative must be considered in light of the further evidence that all the test established was that there was not a large amount of the narcotic in the system at the time of the test.

Accordingly, by reason of the foregoing, I cannot say that the police who arrested the defendant, the prosecuting attorney who presented the case, the judge who presided over the trial, and the 12 jurors who convicted the defendant were in error. In my opinion the police conduct was lawful in all respects, the defendant was fairly tried and justly

convicted by the jury of the "use" of heroin within the meaning of section 11550.

I would affirm the judgment of conviction.

A petition for a rehearing was denied August 24, 1977. Hanson, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied September 28, 1977.