[No. F005753. Fifth Dist. Feb. 11, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY LEON JONES, Defendant and Appellant.

[No. F006894. Fifth Dist. Feb. 11, 1987.]

In re GREGORY LEON JONES on Habeas Corpus.

**[Opinion certified for partial·publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

---

COUNSEL

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BROWN (G. A.), P. J.**—Gregory Leon Jones appeals from a judgment entered on a jury verdict finding him guilty of burglary (Pen. Code, § 459) and use of heroin (Health & Saf. Code, § 11550, subd. (a)). Appellant raises three points: (1) error in denying his pretrial Penal Code section 1538.5 motion; (2) ineffective assistance of trial counsel; and (3) insufficiency of the evidence to support his conviction of use of heroin.

In conjunction with his claim of ineffective assistance of counsel, appellant has filed a separate habeas corpus proceeding which has been consolidated with the appeal for disposition.

### Facts

At approximately 6:30 a.m. Keith Babich left his home at 748 South Spruce Street in Tulare. Later that day, Mr. Babich returned home to find that a bedroom window had been broken and that his belongings were in disarray. Among the items missing from the residence were a Concept brand stereo, two speakers, a turntable, an antique clock, a pocket watch and a tie clasp.

At approximately 9:30 a.m. that day Ms. Latricia Bridges, a neighbor, was backing her car out of her driveway at 753 Spruce Street when she saw a red Chevrolet pull up and stop about two houses away at 748 Spruce, the Babich residence. Ms. Bridges could not help but notice the driver as she was backing out of her driveway because when he observed her looking toward him, "he took a double take and another one." Shortly thereafter she passed by the red car in her car and saw someone wearing a blue beanie cap with what appeared to be a television set in his hands. The trunk of the red Chevrolet was open. Ms. Bridges did not see the height or weight of the person who had the television set and did not see his face.

Ms. Bridges drove approximately two blocks and flagged down Tulare County Sheriff's Officer John Zapalac who was in a patrol vehicle. Ms. Bridges told Officer Zapalac about the suspicious activity which she had just seen at 748 South Spruce Street.

Officer Zapalac proceeded no more than two blocks in the direction indicated by Ms. Bridges and saw a red Chevrolet approaching him from that direction. The red car was one block away from the Babich residence at this point. As the Chevrolet passed by him, Officer Zapalac saw that the driver was wearing a dark blue beanie cap. He also saw in the rear seat of the car an object which appeared to be a television set. There was a passenger in

the car. The officer made a U-turn and activated the red lights on his vehicle. The red Chevrolet hesitated in stopping. Officer Zapalac then turned on his siren and requested backup from the Tulare Police Department.

When appellant's vehicle stopped, appellant got out of his car and approached Officer Zapalac's unit, producing a driver's license upon the officer's request. The officer asked him where he got the property inside the red car, and appellant responded that it was his own and that he had just left his house with it.[1] Appellant was then arrested.

While handcuffed in the rear of Officer Zapalac's police car, appellant was transported to his residence so that the officer could further investigate appellant's story regarding the stereo. At appellant's residence, Deputy Zapalac spoke to appellant's wife, Paula Jones, who represented that appellant had left his home 20 minutes earlier and had not taken any property with him.

A search of appellant's car revealed a screwdriver, a Concept stereo receiver, a turntable, speakers, a pocket watch, a ring, and an antique clock. Mr. Babich subsequently identified this property as the property which had been taken from his home that day.

At approximately 11:25 a.m., while appellant was in police custody and being processed, appellant was advised of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights and waived them. In response to questioning, appellant told the officer that a friend had come over to appellant's apartment and asked appellant to pick up a stereo that his friend wanted to sell.

Appellant stated that the friend showed appellant where to drive; appellant pulled into a cul-de-sac and helped his friend place the stereo equipment into appellant's car.

In response to further questioning, appellant said that he never thought to ask his friend if the property was his or not; that he assumed it belonged to his friend.

At approximately 12:20 p.m., Officer Barcello readvised appellant of his rights, and appellant again agreed to talk with the officer. Responding to questioning, appellant stated that the property found in the car had been

---

[1]At the February 22, 1985, hearing on appellant's Penal Code sections 1538.5 and 995 motions, Officer Zapalac testified that as appellant was approaching his vehicle the officer walked forward a little further to get a look at the inside of appellant's vehicle and saw what appeared to be a radio speaker and turntable and radio equipment.

sitting on a curb in the cul-de-sac and appellant believed that it belonged to his friend.

While appellant was in Officer Barcello's office, the officer noticed that appellant's pupils were dilated and his eyelids were drooping. He also noticed three old needle injection sites on appellant's left arm. The officer believed them to be between three and twenty-one days old. There were also several old injection sites in the back of appellant's left hand, as well as one which appeared fresh, between one and three days old. Appellant told Officer Barcello that he had "fixed" two days before. In the officer's opinion, the symptoms exhibited by appellant were not symptoms of withdrawal but were consistent with rather recent use.

Simon Hernandez, who was in appellant's company at the time he was arrested, was known to Officer Barcello as a narcotics user.

At approximately 2:30 p.m., appellant provided a complete urine sample upon the officer's request.

Chemical testing revealed morphine, a metabolite of heroin, in appellant's urine. There were 100 nanograms per millileter of unconjugated morphine in the sample. Test results showed no codeine present, leading to an inference that the presence of morphine was due to heroin usage.

Dr. Gary Walter, a pathologist, estimated, based upon a hypothetical presented, that the amount of morphine present in the sample indicated heroin use within 24 to 72 hours before the sample was taken. He said that this morphine level could be consistent with withdrawing from the drug.

Dr. Walter further testified that the fact that a sample contained 100 nanograms of unconjugated morphine per millileter would indicate that usage occurred closer to the 24 hour estimate. He also testified that symptoms of use of heroin are likely to include sleepiness and diminished pupil activity. Symptoms of withdrawing from the drug may include agitation, sweating, rapid heart rate, anxiety and nausea. It was Dr. Walter's opinion that the level of morphine present in the sample would indicate that the individual "most likely" would not be under the influence. However, he could not say whether the user would necessarily be in a withdrawal state.

Appellant testified that on the morning of the burglary Simon Hernandez, an acquaintance, came to appellant's house and told him that his wife had thrown him out of the house. According to appellant, Mr. Hernandez asked for a ride to go move his furniture. Appellant testified that he agreed, and, following Mr. Hernandez' directions, went to a field where a stereo system

was leaning against a fence. Appellant stated that he helped Hernandez load the stereo into the car. Appellant was placed under arrest as he drove away from the area. Appellant testified that Mr. Hernandez was wearing a blue beanie. He denied burglarizing the Babich residence. Appellant testified that he first told Officer Zapalac the property in his automobile was his because he did not think it was any of the officer's business whose property it was.

Appellant admitted that he told Officer Barcello that he had used heroin two days before his arrest. He testified, however, that he had used heroin two or three days before his arrest. Appellant testified that he did not feel that he was withdrawing from heroin because "[t]o me, withdrawing is sick, and I wasn't sick." Appellant testified that in his experience symptoms of withdrawal include sweating, vomiting, shakiness, weakness, runny eyes and runny nose.

Appellant further testified that the only thing Mr. Hernandez promised in exchange for the favor he asked was some gasoline money. He denied telling Officer Barcello that the money received from sale of the stereo was to be used other than for gasoline. He also denied telling the officer that the money was to be used to buy heroin.

Appellant admitted that he was unemployed at the time of the incident.

On rebuttal, Officer Barcello testified that appellant had stated that his agreement with Mr. Hernandez was that appellant was to get half of the heroin that Hernandez was going to obtain from sale of the property.

DISCUSSION

PARTS I, II*

· · · · · · · · · · · · · · · · · ·

PART III

*Sufficiency of the Evidence*

 Appellant contends that there is insufficient evidence to support his conviction for use of heroin (Health & Saf. Code, § 11550 (hereinafter section 11550)). Specifically, appellant argues that the use proscribed by section 11550 is a "current use" or "use immediately prior to arrest," and that his use two days prior to arrest does not fit within this definition.

*See footnote on page 398, *ante.*

Respondent agrees that the "use" proscribed by section 11550 is "current use," not use in the past. Respondent argues, however, that the evidence of appellant's heroin use within 24 to 72 hours before his arrest fits within the definition of "current use" as intended by section 11550.

Neither party contends now nor argued at trial below that appellant was withdrawing from the use of heroin. Moreover, as noted, the original charge of being under the influence (§ 11550) was subsequently amended to a charge of use of heroin, a violation of the same section. Thus, the issue presented is whether the evidence of appellant's heroin use within 24 to 72 hours before his arrest fits within the definition of "use" as proscribed by section 11550. While there appears to be no reported case applying section 11550 to such a time frame, nevertheless both appellant and respondent, relying essentially on the same key cases, argue respectively that section 11550 does or does not apply to these facts.

The "use" proscribed by section 11550 is a current use. (*Bosco* v. *Justice Court* (1978) 77 Cal.App.3d 179, 191 [143 Cal.Rptr. 468]; *People* v. *Velasquez* (1976) 54 Cal.App.3d 695, 700 [126 Cal.Rptr. 656].) The term "use" of narcotics refers to the act of injecting or ingesting a controlled substance or narcotic. (*People* v. *Gutierrez* (1977) 72 Cal.App.3d 397, 402 [140 Cal.Rptr. 122].) By punishing individuals found to be under the influence or users of certain dangerous drugs, section 11550 was intended by the Legislature to protect the individual and society from the adverse effects of those substances. (*In re Orosco* (1978) 82 Cal.App.3d 924, 929 [147 Cal.Rptr. 463].) Thus, the object of the statute is to proscribe a use of narcotics that is an activating part of the process of addiction, whatever may be the stage of that process at the time of their use. (*People* v. *Davis* (1966) 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663].)

In *People* v. *Velasquez, supra,* 54 Cal.App.3d 695, the court found insufficient evidence of current use, but stated as follows: "[T]he People's own testimony supports no usage closer than the five-to seven-day period testified to by their own expert. We conclude that, while usage no more distant than that might support a finding of danger to become (again) addicted, it does not support a finding of a current addiction and use." (*Id.,* at p. 700.)

In *People* v. *Gutierrez, supra,* 72 Cal.App.3d 397, the court held that a police officer lacked probable cause to arrest the defendant for a section 11550 violation where the defendant was observed to be experiencing withdrawal symptoms only, there being no evidence that he was under the influence of a narcotic.[3]

---

[3]Appellant incorrectly cites this case as standing for the proposition that use within 12 to 24 hours prior to arrest constituted a section 11550 violation. Appellant has also mistakenly

If a distinction is to be made in the cases applying section 11550, it is as follows: Current continuing use of narcotics is to be distinguished from a past, discontinued use. Thus, withdrawal from the use of narcotics is not a crime; it is in fact the direct result of discontinuing the crime of use. (*People* v. *Gutierrez, supra,* 72 Cal.App.3d at p. 409.) By contrast, "current use" should be construed in light of the above noted purpose of the statute to protect the individual and society from the adverse effects of illegal drug use. (*In re Orosco, supra,* 82 Cal.App.3d at p. 929.) Thus, if the user is supporting his habit through illegal means (i.e., his criminal activity is directly related to his addiction), then his "use" is current and proscribed by section 11550. (Cf., *In re Orosco, supra.*)

The rationale for these precepts is that it is in the public interest to encourage users of illegal drugs to seek rehabilitation. If use sometime in the past was made punishable, such a policy would not only discourage users from seeking rehabilitation but punish those who have used in the past but in the meantime have become rehabilitated and ceased the use of drugs. We cannot believe that the Legislature could have intended that the courts construe section 11550 so as to arrive at such a result.

In the instant case, the evidence showed that Officer Barcello concluded that the injection site on appellant's hand was between one and three days old and that appellant's symptoms (dilated pupils and drooping eyelids) were more consistent with recent use than withdrawal. While Dr. Walter testified that the morphine in appellant's urine indicated use within 24 to 72 hours before the sample was taken, he further testified that the levels of unconjugated morphine in the sample would indicate usage closer to the 24-hour estimate. Appellant told Officer Barcello that he had "fixed" two days before. At trial, appellant testified that he told Officer Barcello that he used the drug two or three days before his arrest. Appellant testified that he did not feel that he was withdrawing at the time of his arrest because he was not sick. Both Dr. Walter and appellant testified that nausea is a symptom of withdrawal from heroin.

The evidence could reasonably be construed to show that appellant used heroin as little as 24 hours before he provided the urine sample, which, in turn, was some 3 hours after his arrest. Moreover, even if the evidence were

referred to the dissenting opinion in *Gutierrez* (*id.,* at p. 414) in stating that the court in that case "... distinguished the situation found therein from *Velasquez.*" In fact, *Gutierrez* held only that symptoms of withdrawal do not constitute probable cause for arrest under that section. The evidence of use 12 to 24 hours prior to the arrest was suppressed in that case, since it resulted from the unlawful arrest (officer unlawfully "searched" defendant's arms, discovering recent injection marks). Thus, the question of whether use within 12 to 24 hours prior to arrest constituted a section 11550 violation was not addressed in *Gutierrez.*

construed to show use within forty-eight hours before appellant's arrest, such usage two days before arrest could clearly qualify for a finding of current use under the previously-cited statement in *Velasquez* to the effect that use less distant than five days prior to arrest might support a section 11550 conviction.

The jury was specifically instructed in this regard that use immediately prior to arrest meant a very brief period of time before arrest. In sum, viewed in the light most favorable to the People (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the evidence supports the conclusion that appellant had recently used heroin within the meaning of section 11550.

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Woolpert, J., and Hamlin, J., concurred.