Filed 10/7/14  P. v. Garcia CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039229 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1226991) |
| v. | |
| EFRAIN SANCHEZ GARCIA, | |
| Defendant and Appellant. | |

Defendant Efrain Sanchez Garcia was convicted by jury trial of using methamphetamine (Health & Saf. Code, § 11550, subd. (a)).[1]  He pleaded no contest to driving with a 0.08 or higher blood-alcohol level with three or more prior convictions (Veh. Code, §§ 23152, subd. (b), 23550) and guilty to two counts of driving with a suspended license (Veh. Code, §§ 14601.2, subd. (a), 14601.5, subd. (a)).  The court imposed a prison term, suspended execution of sentence, and granted defendant probation.

On appeal, defendant's sole contention is that the methamphetamine count must be reversed because the trial court prejudicially erred in instructing the jury that it could

---

[1]     Statutory references are to the Health and Safety Code unless otherwise specified.

convict defendant of this offense if he had used methamphetamine within 48 hours of his arrest. We find no prejudicial instructional error and affirm the judgment.

## I. Factual and Procedural Background

On January 1, 2012, at about 9:45 p.m., a police officer pulled defendant's vehicle over because one of his brake lights was "inoperative." The officer had not seen any driving by defendant that indicated he was impaired. When the officer approached defendant, he saw that defendant "was a bit agitated." He had bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. Defendant told the officer that he had consumed two beers. When defendant got out of the vehicle, the officer saw that defendant had "an unsteady, uncoordinated gait." Defendant did poorly on field sobriety tests. He consented to a preliminary alcohol screening (PAS) test, and it showed that his blood-alcohol level was 0.079.

The officer arrested defendant and transported him to the police department's "DUI trailer" for a further test of his blood-alcohol level. On the way there, the officer noticed that defendant "nodded off." When they reached the trailer, the officer observed that defendant "had excited speech, fluttering eyelids, nonreactive pupils, [and] dry lips . . . ." Defendant continued to be "very hyper, agitated" and seemed unable to sit still, and his pulse was 110 beats per minute, which was high. When the officer took defendant's pulse, defendant "spontaneously stated" "that he used methamphetamines yesterday," "yesterday, but not today."

The officer believed that defendant was under the influence of a stimulant and requested that a blood sample be taken. A blood sample was taken at 10:22 p.m. Methamphetamine at a level of 0.128 micrograms per milliliter was detected in defendant's blood sample. This test result did not indicate when the methamphetamine had been ingested. His blood-alcohol level in this blood sample was 0.10.

2

A jury trial was held on the methamphetamine count, two counts of driving under the influence of alcohol and drugs with prior convictions, and two counts of driving with a 0.08 blood-alcohol level with prior convictions. At the beginning of the trial, the court preinstructed the jury. These instructions included an instruction on the methamphetamine count. "The defendant is charged with using or being under the influence of methamphetamine, a controlled substance. To prove that the defendant is guilty of this crime, the People must prove that the defendant was willfully and unlawfully under the influence of methamphetamine, a controlled substance, when he was arrested. [¶] . . . [¶] Someone is under the influence of a controlled substance if that person has taken or used a controlled substance that has appreciably affected the person's nervous system, brain, or muscles, or has created in the person a detectible abnormal mental or physical condition."

The prosecution's expert testified at trial that methamphetamine "makes the person more active and sometimes agitated," causes nonreactive pupils, an elevated heart rate, dry mouth, dry lips, and "fast speech." She also testified that the level of methamphetamine in defendant's blood was "higher than a normal therapeutic dose." She opined, based on the blood test result and the officer's observations, that defendant was under the influence of methamphetamine at the time of his arrest.

The defense expert testified that the officer's observations did not necessarily show that defendant was under the influence of methamphetamine. Defendant's "nodding off" was, in her opinion, "really contrary" to being under the influence of methamphetamine. The level of methamphetamine in defendant's blood did not by itself indicate he was under the influence of methamphetamine because people have different tolerances. The defense expert testified that the half-life of methamphetamine is 12 hours, and a study had shown that the average methamphetamine level in blood samples tested for methamphetamine was about twice the level found in defendant's blood. She

3

testified that a person who had taken methamphetamine might no longer be under the influence of methamphetamine the next day.

The court instructed the jury after the close of evidence but before closing arguments.[2] As to the methamphetamine count, the court instructed the jury: "The defendant is charged in Count 5 with using methamphetamine, a controlled substance. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully used methamphetamine, a controlled substance, within 48 hours of his arrest."

The prosecutor argued to the jury that the methamphetamine count "is pretty straightforward." "The defendant was exhibiting signs and symptoms of being under the influence. He admitted he had taken methamphetamine yesterday, within 48 hours of his arrest. And his blood tested positive for methamphetamine. And all that you have to find to convict on Count 5 is the defendant used methamphetamine within 48 hours of his arrest. It's pretty simple, pretty straightforward."

Defendant's trial counsel acknowledged that the sole question on the methamphetamine count was "Did Efrain Garcia use methamphetamine?" She also conceded that defendant had admitted using methamphetamine. "And we know, too, just based on his statement that he had taken methamphetamine yesterday. Okay. We have already reviewed that." She did not contend that defendant had not used methamphetamine or was not guilty of the methamphetamine count.

The jury returned a guilty verdict on the methamphetamine count, but it was unable to reach a verdict on the other four counts.

---

[2]     The record does not contain a transcript of the instruction conference, which might have explained why the instruction on this count was inconsistent with the preinstruction on this count.

4

## II. Analysis

Defendant claims that the trial court's instruction to the jury that he could be found guilty of the methamphetamine count if he "used methamphetamine, a controlled substance, within 48 hours of his arrest" was prejudicial error.

Section 11550, subdivision (a) provides: "No person shall use, or be under the influence of any controlled substance . . . ." (§ 11550, subd. (a).) It makes no mention of any temporal limitation. CALCRIM No. 2400, the standard CALCRIM instruction for use of a controlled substance in violation of section 11550, tells the jury that the prosecution must prove that the defendant "used . . . a controlled substance[, a short time before (his/her) arrest]." (CALCRIM No. 2400.) The Bench Notes for CALCRIM No. 2400 state: "A violation of Health and Safety Code section 11550 based on 'use' of a controlled substance requires ' "current use" or "use immediately prior to arrest". . . .' (*People v. Jones* (1987) 189 Cal.App.3d 398, 403-404 [234 Cal.Rptr. 408]; see also *People v. Velasquez* (1976) 54 Cal.App.3d 695, 699-700 [126 Cal.Rptr. 656]; *People v. Gutierrez* (1977) 72 Cal.App.3d 397, 402 [140 Cal.Rptr. 122].)[3] In *People v. Jones, supra,* 189 Cal.App.3d at p. 406, the court found evidence of use within 48 hours prior to the defendant's arrest sufficient. If there is an issue in the case over when the defendant allegedly used the substance, give the bracketed phrase 'a short time before (his/her) arrest' in element 1. (*Ibid.*) Alternatively, the court may insert a specific time or time frame in element 1, e.g., '24 to 48 hours prior to (his/her) arrest.' "

---

[3]    *People v. Gutierrez* (1977) 72 Cal.App.3d 397 (*Gutierrez*) did not involve the sufficiency of the evidence to support a section 11550 conviction or the adequacy of an instruction on a section 11550 count. *Gutierrez* was a challenge to the denial of a suppression motion, and the issue was whether a police officer's observation of withdrawal symptoms provided probable cause to believe that the defendant had violated section 11550. The court determined that withdrawal symptoms were not enough. (*Gutierrez*, at pp. 400-402.) That holding is not material to the validity of the trial court's instruction in this case.

In this case, there was no significant issue "over when the defendant allegedly used the substance." Defendant admitted that he used methamphetamine the day before his arrest, and methamphetamine was found in his blood. The trial court did not elect to use the bracketed phrase "a short time before." Instead, it chose the alternative of inserting a specific time, as suggested by the Bench Notes to CALCRIM No. 2400. Defendant claims that there is no case authority supporting the trial court's use of the alternative suggested in the CALCRIM Bench Notes. He is incorrect.

*People v. Velasquez* (1976) 54 Cal.App.3d 695 (*Velasquez*) was a decision of the Second District Court of Appeal in which the court held, after a very brief discussion, that there was insufficient evidence to support a conviction for use of a controlled substance. The Second District's analysis suggested that a use that occurred a week earlier did not fall within the statute's "use" proscription. "The 'use' proscribed by section 11550 of the Health and Safety Code is a current use, not a use in the past. Even though defendant lied in claiming to have been free of narcotics for several months, the People's own testimony supports no usage closer than the five-to seven-day period testified to by their own expert. We conclude that, while usage no more distant than that might support a finding of danger to become (again) addicted, it does not support a finding of a current addiction and use." (*Velasquez*, at p. 700.) *Velasquez* stands for the proposition that the use must be "a current use" and that a use a week earlier is not "a current use."

*Bosco v. Justice Court* (1978) 77 Cal.App.3d 179 (*Bosco*) was a Fifth District case in which the court relied on *Velasquez.* The issue in *Bosco* was whether the word "use" in section 11550 was unconstitutionally vague. (*Bosco*, at p. 191.) The Fifth District reasoned that "[t]he implication from [*Velasquez*] is that in order to secure a conviction under section 11550 the People must show that the defendant had used a controlled substance immediately prior to the arrest." (*Bosco*, at p. 191.) The Fifth District concluded that the word "use" combined with what it viewed as *Velasquez*'s "time

6

implications" rendered the statutory language not unconstitutionally vague. (*Bosco*, at p. 191.) Of course, *Velasquez* neither stated nor implied that the use must be "immediately prior to the arrest," as the Fifth District suggested, but only that it must be "a current use" and cannot be a week old.

*People v. Jones* (1987) 189 Cal.App.3d 398 (*Jones*) was a subsequent Fifth District case. In *Jones*, at the time of the defendant's arrest, he had an injection site on his hand "which appeared fresh, between one and three days old," and he told a police officer "that he had 'fixed' two days before." (*Id.* at p. 402.) A urine test revealed the presence of morphine, a metabolite of heroin. (*Ibid.*) A pathologist testified that the amount of morphine present in the defendant's urine indicated that he had used heroin between 24 and 72 hours prior to his arrest, probably closer to 24 hours prior. (*Ibid.*) The defendant testified at trial that he had used heroin two or three days prior to his arrest. (*Id.* at p. 403.) The jury was instructed that "use immediately prior to arrest meant a very brief period of time before arrest." (*Id.* at p. 406.)

The defendant in *Jones* was convicted of use. On appeal, he challenged the sufficiency of the evidence on the ground that his use two days prior to his arrest was not "'current use.'" (*Jones*, *supra*, 189 Cal.App.3d at p. 403.) The Fifth District viewed "the issue presented" as "whether the evidence of appellant's heroin use within 24 to 72 hours before his arrest fits within the definition of 'use' as proscribed by section 11550." (*Jones*, at p. 404.) The *Jones* court found that such use does come within section 11550's proscription on use. "[E]ven if the evidence were construed to show use within forty-eight hours before appellant's arrest, such usage two days before arrest could clearly qualify for a finding of current use under [*Velasquez*]." (*Jones*, at pp. 405-406.)

*Jones* supports the instruction given by the trial court. If a use two days before arrest "fits within the definition of 'use' as proscribed by section 11550," then an instruction to that effect cannot be prejudicial error. The only purpose that such an instruction serves is to *favor a defendant* by precluding a conviction for use where, as in

*Velasquez*, the use was so temporally distant that it could not qualify as "a current use." Here, defendant did not dispute that his use was no more temporally distant than one day prior to his arrest. Since such a use is clearly a "current use" under *Jones*, he could not have been prejudiced by the trial court's addition of the alternative language suggested in the CALCRIM No. 2400 Bench Notes.

### III. Disposition

The judgment is affirmed.

_____

Mihara, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P. J.

_____

Grover, J.