[S.F. No. 24689. July 26, 1984.]

WALDO TAYLOR, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE DEL NORTE UNIFIED SCHOOL
DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Diane Ross, Kirsten L. Zerger, Raymond L. Hansen and Ramon E. Romero for Plaintiff and Appellant.

Lawrence B. Trygstad and Roberta D. Coyl as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas S. Owen and Schafer, Cochran, Follett & Owen for Defendants and Respondents.

Roger D. Wolfertz as Amicus Curiae, upon the request of the Supreme Court.

**OPINION**

**GRODIN, J.**—Waldo Taylor, a teacher, appeals from a judgment denying his petition for a writ of mandate to compel the Board of Trustees of the Del Norte County Unified School District (the District) et al., to employ him as a probationary certificated employee (i.e., a probationary teacher) and to pay him back salary and benefits. The main issue raised by this case is whether the preferential reemployment rights granted to certain substitute and temporary teachers under Education Code section 44918[1] apply to teachers hired as temporaries under the provisions of section 44920. We hold that they do and reverse the judgment on this basis.

Waldo Taylor holds a masters degree in education and a valid teaching credential authorizing multiple subject instruction in preschool, grades kindergarten through 12, and adult classes. During the 1979-1980 school year, he was employed by the District as a substitute teacher and part-time coach. During this school year, he performed the duties of a certificated teacher less than 60 percent of the time.

Taylor worked as a day-to-day on-call substitute until October 15 of the 1980-1981 school year. On that day, a permanent employee of the District

---

[1]All citations, unless otherwise noted, are to the Education Code.

was granted a leave of absence. As a result, Taylor·was employed to teach seventh and eighth grade language arts at Crescent Elk Junior High School for the remainder of the school year. Taylor was employed under the provisions of section 44920, which authorize the employment of temporary teachers to replace teachers on long-term leave. During this school year, Taylor served for at least 75 percent of the number of days the regular schools of the District were maintained and he performed the duties normally required of a certificated employee of the District. He also served as a track coach. His evaluations in both capacities were favorable.[2]

For the 1981-1982 school year, the District had seven vacant probationary positions. Among these was a position teaching seventh and eighth grade language arts at Crescent Elk Junior High. Other positions included teaching fifth grade at Crescent Elk, sixth grade at Crescent Elk, and positions teaching lower grades at other schools in the District.[3] Taylor possessed the appropriate teaching credential to teach in any of the seven vacant positions. In every case, however, the District hired another candidate. The District admitted that, in filling the vacant positions, it gave no preferential hiring right to Taylor, but rather hired whom it felt to be the most qualified applicant for each position.

Taylor sought a writ of mandate to compel the board of trustees of the District to employ him as a probationary teacher and to pay him various back salary benefits. His contention is that he should have been reemployed as a teacher because he was granted preferential reemployment rights under section 44918.[4] The trial court denied the petition, finding that section

---

[2]An "Evaluator's Annual Employment Recommendation" completed by Crescent Elk principal Gene Edinger on May 22, 1981, stated "Mr. Taylor's had a fine year. He has a no nonsense approach to learning that instills independent thinking and working on the part of his students. [¶] He is a good man to have around and is one of the leading candidates for a regular assignment in the school." The report recommended Taylor for reemployment. An "Adjunct Duties Assessment Report" completed by Edinger on May 26, 1981, contains the comment "Also did an excellent job as a track coach."

[3]The seven vacant probationary positions were: fifth grade, self-contained, Crescent Elk School; sixth grade, self-contained, Crescent Elk School; seventh and eighth grade language arts, Crescent Elk School; fifth through eighth grade physical education, Crescent Elk School; first through fourth grade, title I, Joe Hamilton School; first grade, self-contained, Joe Hamilton School; and third and fourth grade, self-contained, Redwood School.

[4]Section 44918 provides: "Any employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in such school year and has performed the duties normally required of a certificated employee of the school district, shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year.

"Any such employee shall be reemployed for the following school year to fill any vacant positions in the school district for which the employee is certified and qualified to serve.

"For purposes of this section, 'qualified to serve' shall be defined to mean the possession of an appropriate credential plus completion of appropriate academic preparation or expe-

44918 reemployment rights do not apply to employees hired as temporary teachers under the provisions of section 44920.[5] This interpretation of the law is inconsistent with the plain evidence of legislative intent.

■ The Education Code establishes four possible classifications for certificated employees: permanent, probationary, substitute and temporary. In the case of permanent and probationary employees, the employer's power

rience in the subject matter in which the vacant position occurs.

"For purposes of this section, 'vacant position' means a position in which the employee is qualified to serve and which is not filled by a permanent or probationary employee. It shall not include a position which would be filled by a permanent or probationary employee except for the fact that such employee is on leave.

"Any employee classified as a substitute or temporary employee who has rendered the service required to qualify under this section but who has not been reemployed due to a lack of a vacant position shall be reemployed as a substitute or temporary employee for the following school year.

"In any district in which appointments are made from eligible lists established by examination, special eligible lists shall be established at the end of each school year which consist of the names of those employees who met the requirements of this section. Such lists shall be in rank order based on the final scores established by examination. Such lists shall be valid for at least two school years. Offers for appointments to probationary status during the ensuing school year shall be made from such special eligible lists established by examination; provided, however, permanent or probationary employees terminated during the preceding 39 months pursuant to Section 44955, shall be given priority in employment over persons on such special eligible lists.

"Those employees classified as substitutes, and who are employed to serve in an on-call status to replace absent regular employees on a day-to-day basis shall not be entitled to the benefits of this section.

"Permanent and probationary employees subjected to a reduction in force pursuant to Section 44955 shall, during the period of preferred right to reappointment, have prior rights to any vacant position in which they are qualified to serve superior to those rights hereunder afforded to temporary and substitute personnel who have become probationary employees pursuant to the provisions of this section.

"This section shall not apply to any school district in which the average daily attendance is in excess of 400,000."

[5]Section 44920 provides: "Notwithstanding the provisions of Sections 44917 and 44919, the governing board of a school district may employ as a teacher, for a complete school year, but not less than one semester during a school year unless the date of rendering first paid service begins during the second semester and prior to March 15th, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.

"Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a vacant position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status.

"For purposes of this section 'vacant position' means a position in which the employee is qualified to serve and which is not filled by a permanent or probationary employee. It shall not include a position which would be filled by a permanent or probationary employee except for the fact that such employee is on leave."

.

to terminate employment is restricted by statute. Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629].)

In 1961, the Legislature amended former section 13336 to provide that any *substitute* teacher "who teaches during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in such school year any class or classes which would have been taught by one person absent from service, *shall be deemed to have been a probationary employee* during the entire school year in which he so teaches, with the rights and duties of other probationary employees of the district, and shall be deemed to have served a complete school year as a probationary employee." (Stats. 1961, ch. 1103, § 1, p. 2832, italics added.)

This provision has since been significantly amended a number of times and, in 1976, the entire Education Code was reorganized and renumbered. This 1961 enactment is, however, the origin of the preferential and reemployment right which Taylor claims under section 44918.

The effect of this statutory provision was clear. In the event that a teacher classified as a substitute actually replaced an absent teacher for 75 percent or more of the school year, the "substitute" was automatically transformed into a probationary employee, regardless of the district's failure to classify him as such. Section 13336.5 (Stats. 1963, ch. 1964, § 1, p. 4043) reenacted this provision in substantially identical language. In *Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35, 38 [112 Cal.Rptr. 27], the court observed: "The obvious purpose of [section 13336.5] is to prevent school boards and administrators from abusing their discretion in hiring substitute teachers so as to circumvent the tenure rights of teachers."

But implicit in the provisions of section 13336.5 was a significant problem. This problem was alluded to in *Centinela, supra,* 37 Cal.App.3d 35 at pages 41-42. When a substitute replaced an absent teacher for 75 percent or more of the school year, the substitute became a probationary employee and was automatically entitled to reemployment. But presuming that the absent teacher was absent for legally permissible reasons, that teacher had the right to return to his or her position. Thus, the school district could easily be faced with the necessity of employing two teachers where only one position was available. To avoid this dilemma, school districts would have to fill long-term vacancies on a day-to-day basis with various substitute teachers. As the court in *Centinela* pointed out, this approach could well prove detrimental to the welfare of the students. (*Id.,* at pp. 40-41.) Perhaps

in recognition of this problem, the Legislature in 1971 enacted the predecessor statute to section 44920, Education Code section 13337.3 (Stats. 1971, ch. 57, p. 76).[6]

This provision allowed school districts to replace employees absent due to long-term illness or on long-term leave with teachers classified as *temporaries*. As temporary employees, such teachers would not be affected by the 75-percent provision contained in section 13336.5, applicable only to substitutes. To make this distinction even clearer, the Legislature explicitly excluded section 13337.3 temporary teachers from the benefits of section 13336.5 by providing that the former statute operated "[n]otwithstanding the provisions of" the latter.

In 1973, however, the Legislature amended both statutes. These amendments effected significant changes in the operation of section 13336.5 and it is therefore appropriate to consider the section's legislative history in some detail. As originally introduced, Senate Bill No. 368, 1973-1974 Regular Session, merely extended the 75-percent provision of section 13336.5 to apply to *all* school certificated employees, rather than only to teachers. The bill was amended several times prior to passage, however, and these amendments are highly relevant to the present controversy.

The first amendment (Sen. Amend. to Sen. Bill No. 368 (1973-1974 Reg. Sess.) May 21, 1973) added *temporary* employees to the coverage of the statute, and at the same time deleted the language providing automatic probationary status. Instead, the amended bill provided that "[a]ny such [substitute or temporary] employee shall be reemployed for the following school year *to fill any vacant positions* in the school district for which the employee is certified." (Italics added.) "Vacant position" was defined to mean "a position in which the employee is qualified to serve and which is not filled by a permanent or probationary employee. It shall not include a position which would be filled by a permanent or probationary employee except for the fact that such employee is on leave."

---

[6]Section 13337.3 provided: "Notwithstanding the provisions of Sections 13336, 13336.5, and 13337, the governing board of a school district may employ as a teacher, for a complete school year but not less than one semester during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.

"Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

The final preenactment revision of Senate Bill No. 368 occurred in the Assembly on June 28, 1973. On that date, an amended version of section 13337.3 was added to the bill as section 1.5. The *single* change this amendment made in the language of section 13337.5 was to eliminate the reference to section 13336.5 in the introductory clause, "Notwithstanding the provisions of Sections 13336, 13336.5, and 13337."

Senate Bill No. 368 was enacted in the Statutes of 1973, chapter 279, pages 674-676. As the foregoing legislative history makes abundantly clear, the Legislature intended that the provisions of the amended section 13336.5 should apply to section 13337.3 temporary teachers. In the 1976 reorganization of the Education Code, section 13336.5 became section 44918 and section 13337.3 became section 44920. Thus, it is apparent that the reemployment preference afforded under section 44918 applies to section 44920 temporary teachers such as Waldo Taylor.

■ Generally, for a writ of mandate to issue, two basic requirements are essential, namely, a clear, present and usually ministerial duty on the part of the defendant and a clear, present and beneficial right in plaintiff to performance of that duty. (Code Civ. Proc., § 1085; *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

■ Reemployment of temporary employees eligible under the terms of section 44918 is such a ministerial duty. (See *Fair* v. *Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 186 [153 Cal.Rptr. 56].) ■ The trial court mistakenly relied upon *Centinela, supra,* 37 Cal.App.3d 35,[7] to rule that, as a temporary teacher covered by section 44920, Taylor was not entitled to the reemployment preference of section 44918. Therefore, the court found, the District had no duty to reemploy Taylor under section 44918. As the foregoing legislative history demonstrates, this conclusion was erroneous.

Section 44918 also provides, however, that school districts must reemploy eligible employees only for vacant positions for which the employees are "certified and qualified to serve." Whether Taylor has a clear, present and beneficial right to performance, therefore, must turn upon resolution of the question whether he was "qualified to serve" for any or all of the District's available positions.[8]

---

[7]The *Centinela* court considered the interpretation of the relevant statutes as they existed *prior* to the 1973 amendments which added section 44920 temporary teachers to the scope of section 44918.

[8]The parties stipulated that at all relevant times, Taylor held the appropriate credential to teach in any of the vacant positions.

This issue was not addressed by the trial court and the case must be remanded for a determination on this issue. The parties have addressed the "qualified to serve" issue on appeal, however, and it is therefore appropriate to discuss the issue briefly for the court's guidance on remand.

As the District correctly points out, prior to 1975 the operative language of section 13336.5 (the predecessor statute to § 44918) stated that a 75-percent employee "shall be reemployed . . . to fill any vacant positions . . . for which the employee is *certified.*" (Italics added.) Assembly Bill No. 555 (1975-1976 Reg. Sess.), which was signed into law in 1975 (Stats. 1975, ch. 274, § 1, p. 684), added the requirement that such an employee also be "qualified to serve."

As defined by the statute, "qualified to serve" means "the possession of an appropriate credential, plus completion of appropriate academic preparation or experience in the subject matter in which the vacant position occurs." The District argues that the inclusion of this language in the 1975 amendment indicated a legislative intent to endow school districts with "discretion to select the individuals who will *best* serve the needs of the students for appropriate vacancies." (Italics added.) This contention is simply wrong.

As originally introduced, Assembly Bill No. 555 would have abolished the right of a substitute or temporary employee to be reemployed as a probationary employee as provided by section 13336.5 altogether. Instead, the bill would have provided only that eligible 75 percent employees who had *not* been reemployed as probationary employees would be reemployed as substitutes or temporaries. The bill was amended twice prior to passage, however, and this original feature was quickly eradicated. Rather, the Assembly inserted the "qualified to serve" language. It is noteworthy that, initially, the definition of "qualified to serve" required "possession of an appropriate credential plus completion of appropriate academic preparation *and* experience in the subject matter in which the vacant position occurs." (Assem. Amend. to Assem. Bill No. 555 (1975-1976 Reg. Sess.) Apr. 17, 1975, italics added.) Prior to enactment, though, the definition was amended to substitute "*or* experience in the subject matter. . . ." (Assem. Amend. to Assem. Bill No. 555 (1975-1976 Reg. Sess.) Apr. 29, 1975.)

In light of these legislative amendments, the District's argument that it has complete discretion to choose the best among qualified candidates, regardless of the reemployment rights assured by section 44918, is untenable. Had this been the Legislature's intent, it could simply have enacted Assembly Bill No. 555 as originally introduced.

Rather, the Legislature strictly limited the scope of the districts' discretion. An employee otherwise qualified under the terms of section 44918 need not be hired for a vacant probationary position *only* if he does not hold the appropriate credential or if he lacks *both* appropriate academic preparation *and* experience in the subject matter.

Since Taylor possessed the appropriate credential to teach in any of the vacant positions, the District could be released from its statutory obligation to reemploy him only if he lacked *both* appropriate academic preparation *and* experience in the subject matter for all of the available vacancies.

The District contends that this interpretation of the statute deprives school authorities of the discretion necessary to improve educational quality by selecting the most qualified teachers. The teacher organizations supporting Taylor's position contend that, on the contrary, this interpretation operates to provide an incentive to qualified teachers to make themselves available for temporary appointments, in the hope of obtaining permanent positions. We are not called upon to resolve this policy debate. It is apparent that the Education Code is the product of many compromises between competing considerations, and in this case the choice that the Legislature has made is quite clear. (See *Martin* v. *Kentfield School Dist.* (1983) 35 Cal.3d 294, 299 [197 Cal.Rptr. 570, 673 P.2d 240].)[9]

The judgment of the trial court is therefore reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Kaus, J., Reynoso, J., and Lucas, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I agree with the majority's conclusion that Taylor was entitled to a reemployment preference under Education Code section 44918. However, I cannot agree with the remand order since there is no issue which the trial court must resolve. The record is clear. No one disputed the fact that Taylor was "qualified to serve."

---

[9]Our dissenting colleague suggests that "the test" of proper interpretation in this case lies in the result, and on that score finds preferable "the contrary views of the Court of Appeal." (Dis. opn., p. 510, *post.*) Policy considerations may of course be useful in interpreting an ambiguous statute, but it is the *Legislature's* policy that ultimately must control, and in determining that policy we must pay heed to available evidence of legislative intent. The major premise of the Court of Appeal opinion is that, because sections 44917 and 44920 are mutually exclusive, the Legislature must have intended to exclude section 44920 teachers from the benefits afforded by section 44918. With all respect, the argument overlooks the history of the pertinent statutes which, as we have demonstrated, quite clearly refutes this interpretation.

Even the school superintendent conceded that Taylor was qualified for all the positions for which he applied.

Taylor has demonstrated his right to employment as a probationary certified employee. Therefore, I would issue the writ.

**MOSK, J.**—I dissent. Both parties agree that it is difficult to reconcile sections of the Education Code. Apparently the code as a whole is a crazy-quilt product of well-meaning legislative attempts to accommodate the divergent views of teachers, school boards, parents and the public. To one looking for the answer in many circumstances, the result is like trying to peer through opaque glass. This is such a case.

As between the opinion of the majority and the contrary views of the Court of Appeal, I find the latter preferable. When the school board is able to select the *best* qualified teacher for a class assignment, rather than be compelled to accept one who merely possesses a qualifying credential, the educational interests of the pupils are better served. That should be the test.

Though written more than four decades ago, the following word of caution applies equally today: "The whole system of legislation regulating the educational machinery is based upon the consideration of the welfare and best interests of the children. . . . [T]enure in office and other rights of teachers were also properly considered and regulated, but the fundamental purpose and primary object of the legislature was the consideration of the welfare of the children. This fundamental purpose must not be lost sight of by courts in the construction of legislation dealing with our educational system." (*Knickerbocker* v. *Redlands H. Sch. Dist.* (1942) 49 Cal.App.2d 722, 727 [122 P.2d 289].)

To that end, I adopt as my dissent the Court of Appeal opinion prepared by Presiding Justice Kline and signed by Justices Miller and Smith. The opinion follows in full:

Waldo Taylor, a teacher, appeals from a judgment denying his petition for a writ of mandate to compel the Board of Trustees of Del Norte County Unified School District (District), et al., to employ him as a probationary certificated employee (i.e., probationary teacher)[1] and to pay him various back salary benefits. Taylor's contention, in essence, is that he should have been employed as a teacher because he was granted preferential employment rights by Education Code section 44918. He phrases his contention as follows: "Section 44918 applies to temporary teachers hired under § 44920." "The District had a duty to employ appellant in a vacant position." We

---

[1] Throughout this opinion we use the words "teacher" "certificated employee" and "employee" interchangeably.

have reviewed the applicable facts and law and find that the contentions lack merit.

The relevant facts are set out in a "Stipulation Regarding Facts" which states that Taylor worked for the District as a "temporary" teacher for 75 percent of the 1980-1981 school year. "Taylor was classified as a temporary employee because he was replacing a certificated employee who was on leave of absence." The District had seven vacant probationary teacher positions for the 1981-1982 school year. Taylor applied for the positions and possessed the "appropriate credential." He was not hired. In filling the positions "the District gave no preferential hiring right to . . . Taylor, but rather hired whom it felt to be the most qualified applicant for each position."

In addition, it is undisputed that during the 1980-1981 school year the number of "temporary" teachers in the District did not exceed the number of teachers who were on leave of absence or extended sick leave.

The various general categories of teachers and the relative job security status of each was described by the Supreme Court in *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629], as follows: "The essence of the statutory classification system is that continuity of service restricts the power to terminate employment which the institution's governing body would normally possess. Thus, the Legislature has prevented the arbitrary dismissal of employees with positions of a settled and continuing nature, i.e., permanent and probationary teachers, by requiring notice and hearing before termination. Substitute and temporary teachers, on the other hand, fill the short range needs of a school district, and may be summarily released absent an infringement of constitutional or contractual rights. Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted." (Citations and fns. omitted.)

The narrow definition of the substitute and temporary classifications called for by *Balen* is further compelled because the Education Code subdivides those categories.

Education Code section 44917 provides, in material part, that "Except as provided in section . . . 44920" a school district is authorized to employ "substitute" teachers "to fill positions of regularly employed persons absent from service." These substitutes may be employed "After September 1 of any school year . . . for the remainder of the school year . . . in a position for which no regular employee is available." The District must positively

establish the nonavailability of a regular teacher. The section concludes, "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

Education Code section 44918 provides, as pertinent, that "substitute or temporary" teachers who work at one school for 75 percent of the school year "shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year."

It then states: "Any such employee shall be reemployed for the following school year to fill any vacant positions in the school district for which the employee is certified and qualified to serve." Section 44918 defines vacant position to mean a teaching position which is not "filled" by any "permanent or probationary" teacher. A position is not vacant if it would be filled by such category of teacher "except for the fact" that they are "on leave." Qualified to serve is defined as having the "appropriate credential" and "academic preparation or experience." In the last pertinent clause, the section provides that "day-to-day," "on-call," "substitutes" are not entitled to the benefits of the section.

Education Code section 44920 provides, in relevant part, that, notwithstanding section 44917, a school district may classify as "temporary" employees the limited number of teachers who are hired to serve for an entire school year or a semester in replacement of a regular teacher who "has been granted leave for a semester or year, or is experiencing long-term illness . . . ." The number of temporary teachers "so employed" "shall be limited . . . to that need, as determined by the governing board."

Utilizing language identical to that set forth in section 44917, section 44920 then goes on to state that such "temporary" teachers "shall, if reemployed for the following school year in a vacant position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status." Vacant position is defined as in section 44918.

In the present case it is undisputed that Taylor qualifies as a temporary teacher under section 44920 and the question is whether he is also covered by section 44918.

It is a basic rule of statutory construction that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672], as quoted in *Moyer* v. *Worker's Compensation Appeals Board* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) A literal construction will not prevail over one which accords with the obvious purpose of the statute. (*In re Kernan* (1966) 242 Cal.App.2d 488, 499 [51 Cal.Rptr. 515].) Moreover, "Once a particular legislative intent has been ascertained, it must be given effect " 'even though it may not be consistent with the strict letter of the statute.' " (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].)" (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].) Additionally, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Select Base Materials, supra,* 51 Cal.2d 640, as quoted in *Moyer* v. *Worker's Compensation Appeals Board, supra,* 10 Cal.3d at pp. 230-231.)

In determining the Legislature's intent we must also keep in mind that " '[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' " (*City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318].) Specific provisions are paramount over general ones. (Code Civ. Proc., § 1859, *Stafford* v. *Los Angeles County Employees' Retirement Board* (1954) 42 Cal.2d 795, 798 [270 P.2d 12].) Also, substitute and temporary classifications should be strictly and narrowly defined. (*Balen, supra,* 11 Cal.3d at p. 826.)

Applying the foregoing rules we hold that section 44918 does not apply to temporary teachers, such as Taylor, who are hired pursuant to section 44920. Accordingly, Taylor is not entitled to a reemployment preference. While the two statutes do not conflict, as they apply to different categories of teachers, they are mutually exclusive. Taylor contends that the Legislature's intention was that section "44920 authorizes districts to hire long-term temporary teachers and § 44918 establishes reemployment rights for long-term temporary teachers." In support of the contention Taylor argues, "Silence on the issue of reemployment rights in § 44920 should not be construed to indicate a legislative intent that no such rights be allowed, particularly in view of the express grant of those rights in § 44918. There is nothing unusual about setting forth different rights in different statutory sections." He further argues, "Other sections of the Education Code authorize districts to hire temporaries for only short periods of time. See §§ 44919 and 44921."

Taylor has misconstrued the relevant Education Code provisions. Section 44917 contains the general authorization to hire long term or short term temporary teachers although it sometimes calls them "substitutes." Under section 44917 a school district can employ a temporary teacher to replace a regular teacher who retires, resigns, dies, transfers to another district or leaves his or her job for any other reason. Moreover, section 44917 pertains to both long and short term temporary teachers. While it is true that section 44918 also deals with substitute or temporary teachers, its application is limited to a more specific category than is section 44917; namely, those who teach for 75 percent of a school year. For this reason, we construe section 44918 to regulate the benefits of just those teachers within the specific ambit of section 44917 who serve for 75 percent of a year. However, section 44920 removes from the purview of sections 44917 and 44918 an even more specific, narrow and strictly defined category of temporary teachers: those who replace regular teachers who have been granted a leave of absence or are experiencing a long term illness. The Legislature expressed its intention that sections 44920 and 44917 be mutually exclusive by making each section an exception to the other.

For the foregoing reasons, and giving credence to every word of each section and meaning to the omission of certain words from the various sections,[2] we conclude that the system intended by the Legislature is as follows. Section 44917 authorizes the hiring of substitute or temporary teachers to replace regular teachers who depart and grants some job security benefits to such replacement teachers. Section 44918 grants a reemployment preference to temporary or substitute teachers who serve 75 percent of the year and who replace regular teachers who permanently leave the district during a school year. However, section 44920 exclusively governs the status of replacement for regular teachers who have indicated they will return to teaching after an extended leave of absence. These replacement teachers are not given any preferential rights to reemployment.

Extrinsic factors additionally persuade us that the Legislature intended the interpretation we adopt. The first such factor is that such interpretation is both reasonable and practical. (See *Stewart* v. *Board of Medical Quality Assurance* (1978) 80 Cal.App.3d 172, 179 [143 Cal.Rptr. 641] and cases there cited.) In the situation regulated by sections 44917 and 44918 a teacher has permanently left a district and been replaced by another teacher for 75 percent of the school year. As a result there is a vacant position for the next year which in most cases doubtless can be satisfactorily filled by the temporary teacher who has previous experience with the specific job. Such

---

[2]For example, the absence of words granting preferential reemployment rights in section 44920.

teacher is the obvious candidate for employment preference.[3] On the other hand, in the situation regulated by section 44920, the replaced teacher has returned and there is no apparent connection between the new opening and the job previously filled by the temporary teacher. The temporary teacher in this situation is not so obviously entitled to a preference over other unemployed teachers who may seek the newly opened position.

Further, our holding evenly balances two of the policies sought to be advanced by the statutes in question: "[T]he general policy of the teacher classification system to afford teachers some measure of employment security. . . . [and] the policy of the law authorizing temporary employment of teachers to permit flexibility in teacher assignments and to prevent overstaffing." (*Kalina* v. *San Mateo Community College District* (1982) 132 Cal.App.3d 48, 54 [183 Cal.Rptr. 12].) Teachers who fill a permanently vacant position for a long term are provided a rehiring preference without material prejudice to the ability of school districts to flexibly select among all applicants for other positions. Our construction of the statutory scheme thus gives effect to all relevant provisions, "leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another." (*Stewart* v. *Board of Medical Quality Assurance, supra,* 80 Cal.App.3d at p. 179.)

Moreover, we have also been mindful that, as noted in *Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High School Dist.* (1974) 37 Cal.App.3d 35, 42 [112 Cal.Rptr. 27], ". . . in construing legislation dealing with the educational systems, courts must not lose sight of the welfare of the children which is the fundamental purpose of such legislation." *Centinela,* which involved the predecessor statutes to sections 44918 and 44920, also suggest that section 44918 is not a favored statute because it "serves under certain limited circumstances to obliterate the long established distinction between permanent and substitute teachers and in so doing seriously impairs the traditional discretion exercised by school administrators." (*Ibid.*)

The result we achieve is, in our view, entirely consistent with decisional law to the effect that section 44920 or the predecessor statute controls the status of those employees who fall within its purview. (See *American Federation of Teachers* v. *Board of Education* (1977) 77 Cal.App.3d 100, 106-108 [143 Cal.Rptr. 264]; *Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59, 62 [134 Cal.Rptr. 220]; *Rutley* v. *Belmont Elementary School Dist.*

---

[3]We must emphasize at this point that nothing in the code sections or in our opinion is intended to force a district to rehire or grant any job security status to a temporary teacher who has not performed in a satisfactory manner.

(1973) 31 Cal.App.3d 702, 707 [107 Cal.Rptr. 671].) [End of Court of Appeal opinion.]

The judgment should be affirmed.

Broussard, J., concurred.