Filed 12/28/22; Certified for Publication 1/19/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| REBECCA WU,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>    Defendant and Respondent;<br><br>TWIN RIVERS UNITED EDUCATORS,<br><br>    Real Party in Interest and Respondent. | C092640<br><br>(Super. Ct. No. 34-2019-80003289-CU-WM-GDS) |

This case involves our review of the Public Employment Relations Board's (Board) refusal to file an unfair labor practice complaint on behalf of plaintiff Rebecca Wu, a substitute teacher representing herself in propria persona, against real party in interest Twin Rivers United Educators (Union), a teachers' union. In her unfair practice charge filed with the Board, Wu alleged the Union breached its duty to represent her in

1

her claim against Twin Rivers Unified School District (School District), wherein she claimed to be misclassified as a substitute teacher. The Board declined to file a complaint against the Union based on Wu's charge because Wu, as a substitute teacher, was not entitled to union representation given that substitute teachers were excluded from representation by virtue of the collective bargaining agreement between the Union and the School District.

In cases involving the Board's refusal to file an unfair practice complaint, our review is limited to whether the Board violated the Constitution, misinterpreted a statute, or exceeded its authority. (*International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 271 (*Fire Fighters*).) Wu argues she has a constitutional right to union representation as a misclassified teacher and as a substitute teacher. She further argues she has a statutory right to representation by the Union that could not be circumvented by a collective bargaining agreement.

We disagree with Wu that she has a constitutional or statutory right to representation by the Union as an alleged misclassified employee or as a substitute teacher. Accordingly, we affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

In her unfair practice charge filed with the Board, Wu alleged she was a substitute teacher and home hospital instructor with the School District. While the School District classified her as a substitute teacher, Wu alleged her position as a home hospital instructor required a different classification under the Education Code. She sought to remedy this problem with the School District and contacted the Union for representation in doing so. The Union declined to represent Wu because she was classified as a substitute teacher and substitute teachers are excluded from the Union's membership per the collective bargaining agreement between the Union and the School District. Wu alleged that, because she was a teacher under the Education Code, she was entitled to representation by the Union in the dispute with the School District as to her demand to be

2

placed into the proper classification. Because the Union refused to represent her, Wu argued, the Union breached its duty of fair representation to her.

The Board's general counsel dismissed Wu's charge finding that, because Wu was classified as a substitute teacher, she was excluded from the bargaining unit the Union represented. Further, "[a]lthough [Wu] alleges the [School] District misclassified her, the facts are that she was classified as a substitute. Accordingly, [the Union] did not owe [Wu] any duty to represent her." Wu filed an appeal with the Board. The Board adopted its general counsel's dismissal letter as its decision and ordered Wu's unfair practice charge dismissed without leave to amend.

Wu filed a petition for preemptory writ of mandate pursuant to Code of Civil Procedure sections 1085 and 1086 against the Board as respondent and the Union as real party in interest. Wu alleged the Board erred because it ignored the Education and Employment Relations Act[1] (Act) when finding she did not have a right to union membership as a misclassified employee or a substitute teacher.

The Union demurred to the petition and the Board later joined in that demurrer. The trial court sustained the demurrer without leave to amend because Wu did not "state a claim for relief that [the Board] committed an error falling within the *International Assn. of Fire Fighters* exceptions when it dismissed [Wu]'s unfair practice charge."

Wu appeals.

DISCUSSION

On review of an order sustaining a demurrer without leave to amend, we exercise independent judgment in assessing whether the petition states a cause of action as a matter of law. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.) " ' "We treat the demurrer as admitting all material facts

---

[1]    Government Code section 3540 et seq. Further undesignated section references are to the Government Code.

3

properly ple[d], but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) It is appellant's burden to affirmatively demonstrate the trial court committed an error justifying reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

I

*Wu's Claims Are Reviewable To The Extent They Challenge The*

*Board's Ruling On Constitutional And Statutory Grounds*

Wu contends the trial court should have reviewed her constitutional and statutory challenges to the Board's order. She argues *Fire Fighters* was wrongly decided and judicial review of Board determinations to not issue a complaint should be unlimited. She also argues her challenges to the Board's determination fall within the recognized exceptions articulated in *Fire Fighters*. We agree Wu's statutory challenge is reviewable, as is her constitutional challenge to the extent she raised one in the trial court. We do not address Wu's claim that *Fire Fighters* was wrongly decided because we are bound by our Supreme Court's precedent even if we disagree with its holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Our Supreme Court has noted that, generally, the Board's decision to decline to issue a complaint is not reviewable. (*Fire Fighters*, *supra*, 51 Cal.4th at pp. 267-268.) Our Supreme Court, however, held that the Legislature did not preclude trial courts from exercising traditional mandate jurisdiction to consider challenges to such Board determinations. (*Id*. at p. 271.) "[A] superior court may exercise mandamus jurisdiction to determine whether [the Board's] decision violates a constitutional right, exceeds a

4

specific grant of authority, or is based on an erroneous statutory construction. We stress, however, that it remains true that a refusal by [the Board] to issue a complaint . . . is not subject to judicial review for ordinary error, including insufficiency of the evidence to support the agency's factual findings and misapplication of the law to the facts, or for abuse of discretion. Also, to avoid undue interference with the discretion that the Legislature has intended [the Board] to exercise, courts must narrowly construe and cautiously apply the exceptions we here recognize." (*Ibid.*)

Applying this standard, our Supreme Court analyzed the Board's refusal to issue a complaint against the City of Richmond for instituting layoffs when it was alleged that the Board's refusal to file a complaint was based on an erroneous construction of the governing act. (*Fire Fighters*, *supra*, 51 Cal.4th at pp. 271-277.) While our Supreme Court found it had jurisdiction to consider the claim, it concluded the Board's refusal to file the complaint was not the result of an erroneous statutory construction because, under the governing act, the institution of layoffs did not constitute an unfair labor practice when done for financial reasons. (*Id*. at p. 277.)

With this rule and example in mind, we look to the trial court's order, which provides that Wu did not "state a claim for relief that [the Board] committed an error falling within the *International Assn. of Fire Fighters* exceptions when it dismissed [Wu]'s unfair practice charge." From this language, it is unclear whether the trial court considered the substance of Wu's arguments or simply believed it lacked jurisdiction to rule on those substantive arguments. In the end, however, it does not matter on what ground the trial court sustained the demurrer because Wu cannot demonstrate the trial court erred by rejecting her arguments that the Union owed her a duty of fair representation.

5

## II

*Wu Does Not Have A Constitutional Right To Be Represented By The Union*

Wu contends, for the first time on appeal, that she has a constitutional right to union representation under the Sixth Amendment and the Fourteenth Amendment to the United States Constitution. We note that this contention is forfeited because Wu did not assert it in the trial court. "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Regardless, Wu has not demonstrated she is entitled to union representation through a constitutional mandate. Regarding her Sixth Amendment argument, Wu cites to *Gideon v. Wainwright* (1963) 372 U.S. 335. Wu's reliance on this authority is misplaced. The Sixth Amendment, as well as *Gideon*, pertains to a person's right to representation during a *criminal trial*, and thus does not support her claim that she is entitled to union representation whenever she has a dispute with her school-district employer. (*Gideon*, at pp. 339-340, 343-345.)

Further, Wu has not established a property interest in her position as a substitute teacher or as a misclassified employee such that *the Union* owes her a duty of representation. Wu acknowledges that the School District provided her with a procedure to challenge its classification of her employment. Wu has not explained how that procedure fails to comply with due process or how union representation during that procedure is vital to ensuring she is heard by the School District. (See generally *Goldberg v. Kelly* (1970) 397 U.S. 254, 263-265 [procedural due process requires an evidentiary hearing before a government agency can terminate essential resources that

6

have provided the basis upon which the recipient has subsisted].)  Accordingly, Wu cannot demonstrate she has a constitutional right to union representation as a substitute teacher or as a misclassified employee.

III

*Wu Does Not Have A Statutory Right To Be Represented By The Union*

In her petition for writ of mandate and in her appellate briefing, Wu contends the Act extends a union's duty of fair representation to misclassified and substitute teachers in addition to full-time classroom teachers.  Not so.

California law permits state employees "to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to permit the exclusive representative to receive financial support from those employees who receive the benefits of this representation." (§ 3512.)  It is "unlawful for an employee organization to:  [¶] . . . [¶] . . . [i]mpose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by [the Act]." (§ 3543.6, subd. (b).)  The exclusive representative must "fairly represent each and every employee in the appropriate unit." (§ 3544.9.)  Breach of a union's duty to fairly represent a member constitutes an unfair practice.  (*Paulsen v. Local No. 856 of Internat. Brotherhood of Teamsters* (2011) 193 Cal.App.4th 823, 830-831.)

We defer to the Board's interpretation of the Act unless the interpretation is erroneous.  (*Fire Fighters*, *supra*, 51 Cal.4th. at pp. 269-270.)  This standard "allows courts to correct a clearly erroneous construction of the [Act] by [the Board] when that erroneous construction potentially affects a large class of cases and threatens to frustrate an important policy that the [Act] was enacted to further.  Judicial review under this ground furthers the Legislature's purpose in creating the [Board] and defining the scope of its authority." (*Ibid*.)

Wu contends that because she worked the same hours and performed the same functions as a represented classroom teacher, the Union is required to represent her under the Act. The Board disagreed. Necessary to the Board's finding was that section 3544.9 extends a union's duty of fair representation to employees classified into the unit it represents and not to employees claiming to belong in the unit by virtue of their employment duties. This is not an erroneous interpretation of section 3544.9.

"The purpose of the [Act] is set forth in section 3540: 'to promote the improvement of personnel management and employer-employee relations within the public school systems in . . . California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy.' " (*San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 855-856, superseded by statute on other grounds as stated in *California School Employees Assn. v. Bonita United School Dist.* (2008) 163 Cal.App.4th 387.) The Act "shall not supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations, so long as the rules and regulations or other methods of the public school employer do not conflict with lawful collective agreements." (§ 3540.)

The Board's interpretation furthers these stated purposes by providing certainty to the Union and the school-district employer of the employees subject to the collective bargaining unit between them. As Wu acknowledges, the Union has no control over the classification of any given teacher upon a teacher's hiring. That job is left to the school district that hired the teacher. (Ed. Code, § 44916.) Thus, if the Union was empowered

to determine the classification of teachers by virtue of its placing them into a specific unit of representation, the Union could potentially change the tenure, merit, or civil service rules applicable to teachers simply by placing them into a specific unit of representation that excludes the classification given to them by the school district.  This was something the Act explicitly declared was outside its purpose.  (§ 3540.)

Wu's reliance on *Steele v. Louisville & N. R. Co.* (1944) 323 U.S. 192 is misplaced.  Wu relies on this case to support her claim the Legislature intended the duty of fair representation to extend to employees performing work similar to union members.  In *Steele*, the United States Supreme Court determined whether the Railway Labor Act imposed on a union, acting under its authority "as the exclusive bargaining representative of a craft or class of railway employees, the duty to represent all the employees in the craft without discrimination [based on] their race." (*Steele*, at pp. 193-194.)  The Supreme Court concluded that the Railway Labor Act required the union to represent all employees during labor negotiations whose job classification fell within the class of employees represented by the union regardless of the employees' race or official union membership.  (*Id.* at pp. 194, 204.)

We note the Supreme Court was interpreting a different act when concluding Congress (not the California Legislature) intended unions to represent all members of a craft when negotiating with an employer.  Further, the Supreme Court's holding applies to a union's duty to represent all employees, regardless of union membership, during labor negotiations with an employer (*Steele v. Louisville & N. R. Co.*, *supra*, 323 U.S. at p. 199), not to represent nonmember employees during individual disputes with an employer.  A union's duties are different in these situations, at least under the Act.  (See §§ 3543, subd. (b), 3543.1, subd. (a).)  Finally, in *Steele*, the union refused to represent employees classified into union positions based on their race.  (*Id.* at pp. 193-194.)  Race is irrelevant to labor negotiations and does not meaningfully distinguish one employee from another in that context.  Job classification, on the other hand, as is the case here,

9

does meaningfully distinguish employees from one another and is relevant to determining an appropriate unit of employees under the Act. (§ 3545.) Thus, *Steele* does not support Wu's contention that the Legislature intended for the Act to extend a union's duty of fair representation to misclassified employees.

Wu also contends she is entitled to union representation given her status as a substitute teacher. The Board and the Union point out that the Board has repeatedly and consistently permitted substitute teachers to be excluded from bargaining units containing teacher members. Neither the Board nor the Union, however, provide us with an analytical framework from which to conclude the Act provides for such an outcome. Regardless, upon our own analysis, we conclude it is not an erroneous interpretation of the Act to find that the Act permits substitute teachers to be excluded from units in which classroom teachers belong.

Section 3545, subdivision (a) provides: "In each case where the appropriateness of the unit is an issue, the board shall decide the question on the basis of the community of interest between and among the employees and their established practices including, among other things, the extent to which such employees belong to the same employee organization, and the effect of the size of the unit on the efficient operation of the school district." Subdivision (b) provides that "[i]n all cases: [¶] . . . [a] negotiating unit that includes classroom teachers shall not be appropriate unless it at least includes all of the classroom teachers employed by the public school employer" with certain exceptions not applicable here. (§ 3545, subd. (b)(1).)

The Board has interpreted this section "as creating a rebuttable presumption that all classroom teachers should be placed in the same unit. To rebut the presumption, [the Union] has the burden to show that its proposed unit is more appropriate than one including day-to-day substitutes, based on three factors [contained in subdivision (a)]: (1) community of interest; (2) established practices . . . ; and (3) employer efficiency." (*St. HOPE Public Schools* (2018) PERB Order No. Ad-472 [43 PERC ¶ 86, pp. 4-5].)

10

The Board's construction provides for exceptions to the general rule that all classroom teachers (including substitutes) must be represented by the same union. The fact that there are exceptions demonstrates, at least in the Board's view, that the Act does not require a union to represent substitute teachers when it represents other types of classroom teachers.

This is not a clearly erroneous construction of section 3545. Subdivision (b)'s seemingly broad mandate applicable to "all cases" is tempered by subdivision (a)'s more nuanced approach when the appropriateness of a unit is at issue in an individual case. Only then does the Board consider the relevant employee groups' community of interest, established practices, and employer efficiency. The Board put it perfectly in *Peralta Community College District*: "There can be no dispute that a primary purpose of the [Act] is to promote improved employer-employee relations through the medium of collective negotiations. We believe it to be well established that productive and stabilizing bilateral decision-making is dependent, in part, on the essential cohesiveness and compatibility of the various employee constituents of the negotiating unit. While differences and disagreements are unavoidable and are to be expected, they cannot be so severe, so out of joint, as virtually to promise disruption and final frustration of the negotiating process. Certainly, this is the import of the statutory requirement of community of interest and the reason for the preoccupation with that criterion in the pertinent literature.

"A literal interpretation of [section 3545, subdivision] (b)(1) is unlikely to serve the statutory purpose if resulting units, designed to be the vehicles for advancing the legislative aspiration, prove instead to be the dissension-torn carriers of the system's failures. Thus, other theories have been developed.

"One theory simply turns its back on [section 3545, subdivision] (b)(1) and would establish teacher units solely on the basis of the statutory criteria in [subdivision] (a). This approach, unfortunately, ascribes to the Legislature, in creating [subdivision] (b)(1),

11

the commission of a meaningless act, a conclusion abhorrent to standard principles of statutory construction and devoutly to be avoided here.

"Another approach to the dilemma of section 3545 is to concede that all classroom teachers must be in the same unit–and then to define classroom teachers in a manner which satisfies one's own view of which teachers should be included in the unit. This, as we understand it, is the circular reasoning of [some Board decisions] which has given us a parochial definition limiting the statutory embrace to those considered to be the 'core' of the district's faculty.

"[¶] . . . [¶]

"Section 3545 remains a burdensome provision. . . . [¶] There seems to be little doubt that the Legislature meant to minimize the dispersion of school district faculty into unnecessary negotiating units. It is apparent that unit configurations based on geographical, or campus considerations, or split along lines of academic disciplines and teaching specializations are proscribed by [subdivision] (b)(1). But that is not to say that the Legislature rejected the possibility that critical, negotiation-related differences between groups of teachers might compel unit separation. We believe that to reduce those possibilities the Legislature directed this Board to combine all classroom teachers into a single unit except where an issue of appropriateness is raised and the requirements of [subdivision] (a), which are then invoked, leave the Board with no other option." (*Peralta Community College District* (1978) PERB Dec. No. 77 [2 PERC ¶ 2214, pp. 7-10], underscoring & fns. omitted.)

We agree with this reasoning, especially considering the nature of substitute teachers. There are drastic differences in the Education Code between permanent and substitute teachers that weaken their community of interest or severely effect employer efficiency. For example, "[i]n the case of permanent and probationary employees, the employer's power to terminate employment is restricted by statute. Substitute and temporary employees, on the other hand, fill the short range needs of a school district and

12

generally may be summarily released." (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 504-505.) Indeed, the Board noted in *St. HOPE Public Schools*, that substitute and regular teachers share enough of the same working conditions to establish a community of interest with one another, but the community of interest is weakened by disparate pay structures and the limited schedule of substitute teachers. (*St. HOPE Public Schools*, *supra*, PERB Order No. Ad-472, p. 5.)

Accordingly, it is not an erroneous statutory construction to find that section 3545 allows for the exclusion of substitute teachers from representation by teachers' unions. Because section 3545 does not require the Union to represent substitute teachers, the Board properly found Wu's status as a substitute teacher excluded her from representation by the Union by virtue of the collective bargaining unit between the Union and the School District. Whether substitute teachers should be included within the unit the Union represents is not a question before us. That question would be addressed by the Board in a unit modification petition. (See *Hemet Unified School District* (1990) PERB Dec. No. 820 [14 PERC ¶ 21132, pp. 1-2, fn. 1].) We hold only that the Board did not commit constitutional or statutory error by finding the Union did not breach its duty of fair representation to Wu when it refused to represent her as a misclassified employee or as a substitute teacher.

## DISPOSITION

The trial court's order is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
Robie, Acting P. J.

We concur:

/s/
Hull, J.

/s/
Duarte, J.

14

Filed 1/19/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| REBECCA WU,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>        Defendant and Respondent;<br><br>TWIN RIVERS UNITED EDUCATORS,<br><br>        Real Party in Interest and Respondent. | C092640<br><br>(Super. Ct. No. 34-2019-80003289-CU-WM-GDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Shellyanne Wai Ling Chang, Judge.  Affirmed.

Rebecca Wu, in pro. per., for Plaintiff and Appellant.

J. Felix De La Torre, Wendi L. Ross, Laura Z. Davis, David S. Crossen, for Defendant and Respondent.

Jacob F. Rukeyser, for Real Party in Interest and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on December 28, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


/s/
Robie, Acting P. J.


/s/
Hull, J.


/s/
Duarte, J.